BOWES, Judge.
Appellant, John Brent Biggers, natural father of the adoptive children, (hereinafter John), appeals from a judgment of the Juvenile Court for the Parish of Jefferson in favor of petitioner, Jack Terry II (hereinafter Terry), granting Terry’s petition for adoption of David and Jeri Biggers. We affirm.
John and Elizabeth C. Biggers (hereinafter Elizabeth) were married on August 24, 1973. Twin children, David John and Jeri Alise, were born to the couple on November 14, 1980 in Picayune, Miss., where they resided. In April, 1983, they separated, at which time Elizabeth and the children moved to Gretna, Louisiana, into the home of Elizabeth’s parents. Finally, Elizabeth filed suit for divorce in the Chancery Court of Pearl River County, Mississippi. In November of 1983, a written document styled a “Child Custody, Support and Property Settlement” was executed in Mississippi, and became part of the record in the Mississippi Court, in which Elizabeth obtained permanent custody of the children, *62 and John agreed to pay $175.00 bi-monthly for their support; further, certain visitation rights were enumerated, including visitation by John on two weekends per month, Father’s Day weekend, and alternate holidays.
In June, 1984, a final judgment of divorce was granted in the Mississippi Court, which confirmed and approved the aforesaid agreement. On November 17, 1985, Elizabeth married Terry, and, in December of 1985, the petition for adoption of David and Jeri was filed on behalf of Terry. The petition alleged, among other pertinent facts, that John had paid no support for the children since June 1984; this allegation brought the petition into action under La. R.S. 9:422.1, infra.
John opposed the adoption and the matter was set for an evidentiary hearing.
After the trial on the merits, the court granted the adoption. In excellent and comprehensive, well-written reasons, the long-experienced and learned judge of the Juvenile Court found that John’s failure to support his children was not justified and not occasioned by circumstances beyond his control; and, further, the Court found that the proposed adoption was in the best interest of the children. (The actual failure of support was never contested by John).
On appeal, John urges the following errors:
1. The judgment of the trial court is defective in that at the time the petition was filed, there existed no judgment recognized by the state of Louisiana awarding custody of the children to Mrs. Terry pursuant to the provisions of R.S. 9:422.1;
2. The trial court erred in finding that the failure to support was without just cause or occasioned by circumstances beyond appellant’s control; and
3. The court erred in finding that the adoption was in the best interests of the children.
LSA-R.S. 9:422.1 states in pertinent part:
If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary when the spouse of the petitioner, or the grandparent or grandparents, or the mother or the father has been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
[...]
(2) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.
Appellant contends that Terry could not proceed under R.S. 9:422.1 since the judgment of custody and support is a Mississippi judgment which had not been judicially recognized by any court in Louisiana. Appellant avers that in order to invoke the provisions of 9:422.1, it was necessary for Terry to have complied with LSA-C.C.P. Art. 2541 relevant to execution of foreign judgments. Under C.C.P. 2541:
A. A party seeking recognition or execution by a Louisiana court of a judgment or decree of a court of the United States or a territory thereof, or of any other state, or of any foreign country may either seek enforcement pursuant to R.S. 13:4241, et seq., or bring an ordinary proceeding against the judgment debtor in the proper Louisiana court, to have the judgment or decree recognized and made the judgment of the Louisiana court.
R.S. 18:4242 states:
A copy of any foreign judgment authenticated in accordance with an act of congress or the statutes of this state may be annexed to and filed with an ex parte petition complying with Code of Civil Procedure Article 891 and praying that the judgment be made executory in a court of this state. The foreign judgment shall be treated in the same manner as a judgment of a court of this state. It shall have the same effect and be subject to the same procedures, and defenses, for reopening, vacating, or staying as a *63 judgment of a court of this state and may be enforced in the same manner.
It is uncontested that neither Elizabeth nor Terry brought an action to have the judgment recognized under the above statutes. However, we find this fact is not fatal to appellee’s cause. We do not find a requirement that a custody judgment under R.S. 9:422.1 be recognized and made executory under either of the foregoing statutes.
Neither Elizabeth nor Terry sought to enforce the provisions of the Mississippi custody decree in the action before us. Certainly, Elizabeth would have had to have the judgment recognized and made executory by virtue of these statutes had she sought to collect the prescribed child support, but we are not concerned with that issue. See LeJeune v. LeJeune, 310 So.2d 655 (La.App. 1 Cir.1975).
Further, if she had attempted to enforce the custody decree itself, it would have been necessary for her to comply with the provisions of the Uniform Child Custody Jurisdiction Law, La.R.S. 13:1714(A):
A certified copy of a custody decree of another state may be filed in the office of the clerk of any district court or family court of this state. The clerk shall treat the decree in the same manner as a custody decree of the district court or family court of this state. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a court of this state.[1]
To maintain an action for adoption under R.S. 9:422.1(2), it is certainly essential that the applicant stepparent prove the existence of a valid custody judgment in favor of his or her spouse. To this end, the provisions of La. CCP 1395 provide the minimum requirements to evidence custody.[2]
At the hearing in the Juvenile Court, Terry introduced certified copies of the Mississippi judgment, which were admitted without objection. Further, appellant not only admitted but pleaded the existence of the judgment in his answer to evidence the terms of visitation. Under these circumstances, we find that there was proof of a valid custody judgment sufficient to invoke the provisions of R.S. 9:422.1(2) mentioned above. Consequently, this assignment of error is without merit.
Appellant’s next contention in his second assignment of error is that the trial court erred in (a) finding that John’s failure to support was without just cause and (b) failing to find that such nonsupport was due to circumstances beyond his control.
The statutory conditions of being a nonresident of this state and of actual nonsupport for a period of one year, referred to in R.S. 9:422.1, supra, is not contested by John, and the trial judge found it was undisputed. However, the legal requirements go further:
In addition to the statutory conditions, the jurisprudence also requires: (1) that the failure to pay child support must *64 have been without just cause, [...] and that the adoption must be in the best interest of the child, [...] Even if failure to support is proved, the court still must determine that the adoption, and thus the severance of the filial ties with the natural parent, is in the best interest of the child. [...] It is not sufficient to simply examine the love and home environment provided by the adopting parent; it is also necessary to determine the closeness of the child’s ties with the non-custodial parent and the effect this loss would have on the child. In Re Adoption of Broussard 469 So.2d 454 (La.App. 3 Cir. 1985) [citations omitted]
Once non-payment is shown, the natural parent has the burden of proving that this failure is with just cause or has been occasioned by circumstances beyond his control. In Re Glass Applying for Adoption, 424 So.2d 383 (La.App. 2 Cir. 1982). We agree that the burden of proof was on John, and that he failed to carry it.
On this issue, we adopt as our own the trial court’s findings of fact which are amply supported by the testimony and evidence in the record:
John Biggers argues that several situations constitute just cause for his failure to support his children. Those are financial hardships, lack of knowledge as to the whereabouts of his children, and his impaired mental and physical abilities resulting from his 1982 automobile accident.
The financial hardships described by John Biggers consist of salary reductions, inability to work full weeks consistently and high medical expenses. Although Mr. Biggers has suffered salary losses due to both a reduced income and. missed work days, his lowest annual income presented to the Court was $18,-000.00 in 1984. While this figure may reflect a reduced earning capacity, it certainly does not indicate one so reduced as to render Mr. Biggers incapable of financially supporting his children. Additionally Mr. Biggers owns 20 acres of land in Picayune on which he has, since his divorce, built an $80,000 home. He has received monetary compensation equaling $165,000.00 for injuries suffered due to his 1982 automobile accident. Recently he incurred a $50,000 debt to assist him with the start up costs for his new business venture. Such indicates that he is and has been over the past two years financially able to support his two children.
Mr. Biggers further argues that he could not visit or support his children because he had no knowledge of their whereabouts after July 1984. It is undisputed that through July 1984, John Big-gers knew his children and their mother resided with her parents at 2117 Diana Street in Gretna, Louisiana. Subsequent to her move from her parents’ home, Elizabeth Cuadrado did not advise John Biggers of her new addresses and for at least part of that time had no number and address of Elizabeth Cuadrado’s parents. Elizabeth Cuadrado testified that the method available to John Biggers when he wanted to reach his children was to call her parents and leave a message for her. Mr. and Mrs. Cuadrado, Elizabeth’s mother and father, each testified that every message left for Elizabeth was delivered to her. However, the messages were few and no phone calls were received for Elizabeth after December, 1984.
Mr. Biggers’ own testimony reflects that he was able to reach Elizabeth, through her parents, and arrange for he and his mother to visit his children in December of 1984. Further, Mr. Big-gers’ attorney in the personal injury suit stemming from his automobile accident did serve Elizabeth Cuadrado with a subpoena at her River Oaks address. This indicates that Mr. Biggers was able to reach his children and their mother on occasions which served his interest. No attempts were made by John Biggers to pay support to Elizabeth through her parents’ address. There is no evidence that this method of payment was unworkable and, in fact, prior to August 1984, he had mailed support payments to that address. Certainly, John Biggers’ *65 expressed concern about funds actually reaching Elizabeth through her parents could have easily been overcome by paying support with checks. The means of communication available to John Biggers was obviously operational. There is nothing to indicate that such method became unusable over time. Although this method of communication may have been more cumbersome than John Biggers would have liked, it does not constitute circumstances beyond his control and just cause for nonsupport.
John Biggers further argues that his mental and physical impairments rendered him unable to contend with the complex situation of paying child support. In light of Mr. Biggers’ ability to hold a job, begin a new business venture, arrange for a new home to be constructed on his Picayune property and maintain, since June 1984, a family relationship with Ms. Brock and her two minor children, it is inconceivable that he was unable to mail a check to the Cuadrado residence in an attempt to support his children or, if he had so chosen, pursue the acquisition of their address. The Court recognizes that John Biggers suffers from mental and physical impairments as a result of his automobile accident and that the last years have been a very trying period for him, however, these do not constitute circumstances beyond his control or just cause for failure to support his children.
Further, John testified that of the monetary settlement referred to hereinabove, he received $20,000 in cash in a lump sum, he did not pay the child support which was then due because “if I can’t see my children, then why in the heck should I have to pay for them.” The Court also found with reference to the trust fund which John contended he set up allegedly for the benefit of the children, that neither child is an income or principal beneficiary. John Big-gers is the only beneficiary and neither David nor Jeri stand to benefit from these funds now or in the future. Our review of the Act of Trust confirms this finding.
We also note that among John’s voluntary obligations, he maintains Ms. Brock and her children in his home, and apparently supports that family.
We agree with the trial court’s conclusion that John failed to show that his refusal or failure to support his children was with just cause, or occasioned by circumstances beyond his control. This assignment is also meritless.
Finally, appellant contends that the judgment granting adoption was not in the best interest of the children.
R.S. 9:422.1 does not set the criteria to be used in determining whether or not an adoption shall be granted. It applies only to the narrow question of whether parental consent shall be required when a minor’s adoption is sought. The best interest of the child is the major standard to which a court must look before it can determine when or whether to order an adoption. R.S. 9:432. Adoption of Latiolais 384 So.2d 377 (La.1980)
The trial court found as matters of fact:
David and Jeri Biggers have lived with petitioner since his marriage to Elizabeth Cuadrado in November 1984, a significant period of time considering the age of these children. The record reflects that Jack Terry has provided both love and a happy home environment to the children. The mother of the children testified that a very good relationship exists between she, Jack Terry and the two children and that the children view Jack Terry as their father. This was not contested by John Biggers. Further, Elizabeth Cuadrado consents to the adoption of her children by Jack Terry and to the changing of their names.
Although John Biggers claims to love his children and wants to have relationship with them, he has not seen or spoken to his children since December of 1984. He resided with the children for the first two years of their lives, then visited the children irregularly until June 1984. While he contends that the children’s residence in Gretna hindered his visitation, his job required him to commute to New Orleans each day he *66 worked from May 1983 through March 1986.
Also, Elizabeth testified that no birthday gifts, cards, or letters were sent to the children for any occasions, except Christmas of 1984, the last time John visited the children.
There was conflict in the testimony as to how often John attempted to contact Elizabeth or her mother in attempts to exercise his visitation rights. The Court resolved the question in favor of Elizabeth and her parents, finding their testimony to be more persuasive. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Canter v. Koehring, 283 So.2d 716 (La.1973). We find no error in the trial court’s conclusions as to credibility, nor in it’s determination that ...
Considering the limited time which John Biggers maintained a relationship with his children, the period of time which has passed since such relationship existed and the young age of these children, it is apparent that the children, at this time, have no meaningful or close relationship with their natural father. There is no evidence that severance of filial ties with their natural father will have a detrimental effect on these children.
Appellant’s reliance on In Re Hinton, 390 So.2d 972 (La.App. 2 Cir.1980) is misplaced. In that case, the court specifically found that the failure of the natural father to visit was due to the mother, who was uncooperative and made visits difficult and unpleasant. No such situation exists here. The Court in Hinton did state, and we agree, that where the evidence indicates a real probability that the children can have and enjoy and benefit from a continuing relationship with their father, such is an appropriate factor to be considered in determining the best interests of the children. In Hinton, such probability existed; here, there is no evidence that such benefit is probable.
Accordingly, we find no manifest error in the trial court’s conclusion that the adoption is in the best interests of the children.
For the foregoing reasons, the judgment appealed from is affirmed. Costs of this appeal are taxed to appellant.
AFFIRMED.

. Certified copies of the judgment were in fact filed in the Clerk’s office on April 18, 1986, nine days after the hearing terminated but several weeks before final judgment was rendered.

. La.C.C.P. 1395
An official record, or an entry therein, of the United States, of any state other than Louisiana, of any territory of the United States, of any foreign country, or of any political subdivision, corporation or agency of any of the above, when admissible for any purpose, may be evidenced by a copy attested by the officer having legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office. If the office in which the record is kept is in a foreign state or country, the certificate may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent or by any officer in the foreign service of the United States stationed in the foreign state or country in which the record is kept, and authenticated by the seal of his office.