545 So.2d 1122 (1989)
In re Leonard Lawrence LAMBERT, Applying for the Adoption of S.M.B., Jr. and K.D.B.
No. 89-CA-115.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1989.
Writ Denied; Stay Recalled September 22, 1989.
Raymond C. Burkart, Jr., New Orleans, for appellant.
Wiley J. Beevers, Metairie, for appellee.
Before GAUDIN, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
The natural father of two young boys appeals from judgment granting their adoption by the stepfather.
The children are Steven Michael Burns, Jr., born on March 13, 1977 and Kevin David Burns, born on June 25, 1980, children of the marriage of Ava Merle Cummins and Steven Michael Burns. They lived with their mother following the parents' physical separation in October, 1981. The couple were divorced on May 19, 1986 and the mother married the petitioner, Leonard Lambert, shortly thereafter. The children and Mr. and Mrs. Lambert have lived together since 1985.
Mr. Lambert's petition, filed on August 5, 1988, alleges that the natural father's consent to the adoption is not required because he has failed to contribute to the children's support since May, 1987 and has had no contact with the children for more than a year. Following a hearing on October *1123 4, 1988, the court rendered judgment in favor of Leonard Lambert, granting the adoption and ordering that the children's surname be changed to Lambert. In his reasons for judgment the court stated that the requirements of LSA-R.S. 9:422.1(1)[1] had been met; therefore, Mr. Burns' consent was unnecessary. The judge found that it was in the best interest of the children to be adopted, as they were in a stable home environment and had genuine affection for their stepfather. He stated that a continuation of their relationship with the biological father "could only serve to retard their development and happiness."
The appellant asks this court to consider two issues: whether the appellee had a cause of action under LSA-R.S. 9:422.1 to petition for adoption and whether the Juvenile Court was entitled to exercise its jurisdiction, when proceedings for a change in custody and suspension of an order of support were pending in the district court.
Cause of Action under LSA-R.S. 9:422.1
The jurisprudence has held that once non-payment of court-ordered child support has been shown, it is the natural parent's burden to prove that he had just cause not to pay or that the failure to pay resulted from circumstances beyond his control. In re Terry, 503 So.2d 60 (La.App. 5th Cir. 1987). If the parent alleges lack of employment, he must prove that he was not only unemployed but unemployable. Vosbein v. Vosbein, 506 So.2d 215, 217 (La. App. 5th Cir.1987), and cases cited therein. Where a parent has made only partial payment within a year of the adoption petition, support payment must have been significant for the statute not to be applicable. Haynes v. Mangham, 375 So.2d 103 (La. 1979); In re Ackenhausen, 244 La. 730, 154 So.2d 380 (La.1963).
In this case Burns testified that he had been unemployed from July, 1987 until February, 1988, but was working and able to support the children from then on. The transcript contains nothing more than his flat statement and does not fulfil the burden of proving just cause.
As to whether he made significant payments, the record reveals that as early as 1982 the mother filed charges of criminal neglect of family against Burns, in St. Tammany Parish, that he continued to accumulate arrearages, that he was incarcerated in March, 1986 but released at the appellee's request upon payment of a $1,000 bond, that numerous accommodations were made but not complied with. He testified in court that he had made two payments in 1986, when he was ordered to pay $200 per month, and one payment of $50 in 1987. Clearly, these payments are not significant when compared with the full amount ordered and were certainly not close to 25% of the support, which the Haynes court deemed significant.
Burns' second defense is that the divorce decree of the 24th Judicial District Court, signed on May 19, 1986, relieved him of monthly support responsibilities. The pertinent clause of the judgment reads as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that due to the existence of an agreement between the parties, that the rules for contempt, child support arrearages, attorney's fees and wage assignment brought by Ava Merle Burns be and hereby are dismissed, the parties agreeing that all child support payments and arrearages are to be paid by Steven Michael Burns, Sr. pursuant to the 22nd Judicial District Court, case number, criminal neglect104201 and it is further understood that if this situation is to change, a *1124 rule must be brought by either parties seeking to reinstate the payment of child support in these proceedings. [Emphasis supplied.]
A minute entry in case number 104201, 22nd Judicial District Court, St. Tammany Parish, dated June 9, 1986 states that Burns appeared with counsel at a probation revocation hearing and that the court ordered the following:
... whereupon Court ordered the obligation be reduced to $200. per month coincide (sic) with the Civil Order plus $100. per month towards his arrears of $4,542.30 effective from May 10, 1986. Further, Court ordered additional special condition of Probation being that the defendant serve two weeks in the Parish Jail. Court ordered the defendant to execute an Income Assignment for his obligation and arrears plus Medical Support.
The proceedings in the St. Tammany neglect case began in October, 1982. The rule for contempt and arrearages had been brought in the divorce proceedings in Jefferson Parish on March 14, 1986 and the parties later compromised. Although the May 19, 1986 decree may not be a model of clarity, it unmistakably ordered that support payments were to be made in accordance with court orders in the St. Tammany criminal neglect suit. A family support recommendation of the Juvenile Court of the 24th Judicial District Court, signed by Burns and dated May 4, 1987, states that, "Defendant agrees to adopt the Judgment of support from St. Tammany Parish, and support is set on a weekly basis, as indicated below...." The amount set out is $72.64 per week. Counsel for Burns states in brief that later non-support proceedings in Jefferson were dismissed on February 29, 1988 because he established just cause for failure to pay; however, no copy of that judgment appears in the record.
Burns admitted at trial that he was under court order in 1986 to pay $200 per month and in 1987 to pay $72.64 per week. Accordingly, we reject his counsel's argument that because of the May 19, 1986 judgment there were no outstanding orders of support.
The appellant next argues that the juvenile court erred in exercising its jurisdiction over the adoption petition, when he had previously filed a motion in the 24th Judicial District Court for joint custody and to suspend child support.
Burns' petition was filed on July 26, 1988, followed by Lambert's adoption petition on August 5, 1988. Burns filed an exception to the adoption on September 2, 1988, alleging the court had no jurisdiction, apparently on the basis of his previously filed motion in the other court, and because there was no proceeding relative to custody or child support pending in the juvenile court. A hearing was set for September 15, 1988 on motion of counsel for the appellee, who requested that Burns' motion be continued without date pending the outcome of the adoption hearing; the motion was instead reset for November 29, 1988 and the adoption hearing was held in the interim. We have no record of, nor does counsel for Burns allude to, the filing of any opposition to the continuance or motion to stay the adoption proceedings. As he did not avail himself of a remedy, he cannot now complain. As appellant knows, the juvenile court has exclusive jurisdiction over adoption proceedings.
Best interest of the children
Although the appellant did not raise the issue formally, in brief he indicated that the adoption would not be in the children's best interest.
R.S. 9:422.1 applies only to the question of whether the objecting parent's consent is required. The jurisprudence has held that even if the natural parent's consent is not required because of his non-support, the court must consider whether or not the adoption is in the best interest of the child. Adoption of Latiolais, 384 So.2d 377 (La. 1980). As noted by the appellant, in some cases where the parent has failed to support, the court has denied an adoption after finding that the parent continued to maintain contact with the child and there was a positive, ongoing relationship with the child. In re EWB, 441 So.2d 478 (La.App. 2nd Cir.1983); In re Kuchler, 513 So.2d 374 (La.App. 4th Cir.1987).
In the case before us the evidence suggests that such a relationship between the *1125 natural father and his children does not exist. The court interviewed the boys in chambers. Both boys indicated they understood and wanted the adoption; they also understood their father's request for joint custody but did not wish to live with him six months and their mother six months. When asked if he could visit his father for a week, the older boy said, "I could see him for a day but I..I couldn't stay around him too long."
Dr. Camilla Cowardin, a child psychiatrist, interviewed Mr. and Mrs. Lambert and both children individually and was called as a witness by the Lamberts. She testified that her focus was whether or not the stepfather had become the children's psychological parent, and felt that Lambert had indeed assumed that role. It was her impression that no bond had been established between the younger boy and his father; however, he would like to see his father if his stepfather thought it was "safe". She felt the older boy trusts his stepfather and, although he cares for his father, he is not emotionally dependent upon him. He expressed concern that his seeing his father might hurt the stepfather's feelings. Dr. Cowardin stated that, assuming the history as related to her was correct, she would recommend the adoption.
The father attributes the lack of a child-parent relationship to the mother's blocking his attempts to see the children. Mrs. Lambert, in her interview with the social worker, indicated that when the boys were younger they had visited frequently but gradually became reluctant to go with him. At trial the parties both testified that the last visit took place in August, 1986. Mrs. Lambert admitted that she had refused to let them visit after Burns had twice taken the boys out of state without her knowledge. On other occasions before then she refused visitation when it was apparent he had been drinking. The children had also reported an incident in which a quarrel between Burns and his girlfriend ended in threats with a gun and knife. One of the children reported in his interview with the judge that he had fun at his father's house "but sometimes he got drunk and he'd get real angry at people;" however, neither child expressed fear of the father. While restricted visitation might have been a solution, it was not attempted; as it was not, the mother's concern about their visiting in Burns' home is understandable. The father made no attempt to contact the boys in any manner after August, 1986. The family moved to a new home and he testified that he did not know their whereabouts or telephone number. Mrs. Lambert denied having concealed this information from him, explaining that Burns' brother is married to her sister and knew the address and telephone number. Further, Burns knew the name of her attorney and if need be could have found the children through him.
The manifest error rule applies to adoption cases. The social service report contained no material adverse to the adoption other than Mr. Burns' opposition. The trial judge carefully considered the evidence before him and we find no error in his decision. Accordingly, we affirm the judgment granting the adoption.
AFFIRMED.
NOTES
[1] R.S. 9:422.1 reads as follows in pertinent part:

If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary when the spouse of the petitioner has been granted either sole or joint custody, or when the grandparent or grandparents, or the mother or the father bas been granted sole custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year.