660 So.2d 830 (1995)
STATE of Louisiana In the Interest of ML and PL.
No. 95-CK-0045.
Supreme Court of Louisiana.
September 5, 1995.
Sherry Watters, New Orleans, for applicant.
Camille B. Poche, Jason A.T. Jumonville, Gordon, Arata, McCollam & Duplantis, New Orleans, for respondent.
LEMMON, Justice[*]
This is a proceeding filed by the State of Louisiana, Department of Social Services, Office of Community Services to terminate a *831 mother's parental rights on the grounds of abandonment under La.Child.Code art. 1015(9), which requires, among other things, proof that "[t]he parent has failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility." (emphasis added). We granted certiorari to resolve a conflict among the circuits over whether the State or the parent has the burden of proving the "without just cause" portion of Article 1015(9)'s requirement. The court of appeal, agreeing with the juvenile court, held that the State, as the petitioning party, had the burden of proving that the failure was "without just cause" and that the State did not meet that burden. Reversing, we hold that "just cause" is an affirmative defense which allows the parent, after the State has proved abandonment for at least four months and failure to provide for the child's care and support, to prevent termination by proving that the failure was with "just cause" and therefore excusable.

Facts
The two children involved in this proceeding to terminate parental rights[1] are ML, a girl born on May 13, 1990, and PL, a boy, born on April 30, 1993. The mother had disappeared in 1981 from her home of origin in Pennsylvania, and her family had not heard from her until 1990 when ML was born.
In June 1991, ML was placed in the State's custody after she suffered incidents of physical abuse and neglect and the mother refused housing and medical assistance for herself and the child. ML was adjudicated a child in need of care, but the mother refused to cooperate in case plans proposed by the State. Soon after the adjudication, the mother disappeared. The mother's parents came to Louisiana from Pennsylvania and found her in a park, but could not persuade her to return with them. Efforts of the State authorities to find her were unsuccessful.
ML remained in the State's custody until February 1993, when the Louisiana court granted custody of ML to her maternal aunt and uncle in Pennsylvania.
After PL was born in 1993, the mother was placed temporarily in the hospital psychiatric ward. The case worker's business card found in her possession led the State to link her with ML, but she did not inquire about ML or her parents.
The State arranged lodging for the mother at a Salvation Army women's shelter upon her discharge from the hospital, but she failed to report there. Instead, she disappeared once again. PL was adjudicated a child in need of care and at the time of trial of the termination proceeding was living with foster parents in Louisiana.[2]
Although there was evidence that the mother remained in the New Orleans area, she never attempted to contact the case worker or PL. Indeed, the case worker attempted to find her without success until November 1993, when the case worker learned that the mother was living in Pennsylvania with her parents and participating as an outpatient in a mental health clinic.
In December 1993, the State filed the instant proceeding to have the mother's parental rights terminated on the basis of desertion and abandonment under La.Child.Code arts. 1015(8) and 1015(9). An attorney who was appointed to represent the parent notified the mother of the proceeding and ultimately participated in the trial.
At trial, the State introduced evidence of the mother's abandonment of the children and of her failure to provide for the children's care and support, as well as circumstantial evidence of her intent to avoid parental responsibility permanently. The mother's court-appointed counsel cross-examined the *832 witnesses, but did not raise any issues by pleadings or introduce any evidence. The sole evidence regarding the mother's mental illness was the records from the mental health clinic that were introduced by the attorney for the children.[3] Nonetheless, the juvenile court found that the State had failed to meet its burden of proof and dismissed the State's petition.
On appeal, the court of appeal concluded that the State failed to establish the elements of either desertion or abandonment. No. 94-0775 (La.App. 4th Cir. 10/27/94), 645 So.2d 800.
We granted the State's application for certiorari, primarily to address the burden of proof issue. 95-0045 (La. 2/9/95), 649 So.2d 413.

Termination of Parental Rights
Title X of the Children's Code, which became effective on January 1, 1992, governs the involuntary termination of parental rights. La.Child.Code art. 1015 sets forth ten grounds on which a court can terminate parental rights. Only one ground need be established, La.Child.Code art. 1015, but the judge must also find that the termination is in the best interest of the child. La.Child. Code art. 1039.
La.Child.Code art. 1035 sets forth an elevated evidentiary standard, requiring proof beyond a reasonable doubt for two of the grounds and proof by clear and convincing evidence for all other grounds.

Desertion
To establish desertion, La.Child.Code art. 1015(8) requires proof of the following elements:
(a) The child has been abandoned by his parent for a period of at least four months.
(b) The parent has made no provision for the child's care and support.
(c) After a diligent search, the whereabouts of the child's parent is unknown.
The court of appeal concluded that the State "failed to meet condition (c) under paragraph (8) because the whereabouts of the mother was known to [the State] when the petition was filed and at the time of trial." 645 So.2d at 801.
The State argues in this court that the Legislature, in requiring that the parent's whereabouts were unknown after a diligent search, intended for that requirement to apply only during the four-month abandonment period, and not to the date the petition was filed or the trial held. We decline to read such a limitation into the provision. By its express terms, Article 1015(8) is inapplicable when the State knows the parent's whereabouts, and the State must pursue other grounds in order to terminate parental rights. The State conceded in its petition that it knew the mother's whereabouts, and the evidence at trial established that the mother was living in Pennsylvania with her parents. Accordingly, we conclude, as did the lower courts, that the ground of desertion is inapplicable.

Abandonment
For the State to obtain a judgment terminating parental rights because of abandonment, La.Child.Code art. 1015(9) requires proof of the following elements:
(a) The child has been abandoned by his parent for a period of at least four months.
(b) The parent has failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility. (emphasis added).
Here, the element of abandonment for at least four months is undisputed. As to the mother's failure to provide for the children's care and support, the evidence showed that the mother refused assistance in housing and health care for her children, as well as for herself. After the children were adjudicated as children in need of care, the mother refused to cooperate with visitation plans or to attend parenting class. She disappeared soon after each birth and did not attempt to contact either child or the social worker, despite having the social worker's card. Thus, the State not only established clearly and convincingly that the mother failed to *833 provide for the children's care and support, but also proved circumstances that clearly and convincingly demonstrated the mother's intention to avoid parental responsibility permanently.
In the light of the State's proof of these requirements of Article 1015(9), the crucial issue is the placement of the burden of proving "without just cause."
In 1993, the Fifth Circuit interpreted the "without just cause" language of Article 1015(9)(b) directly contrary to the intermediate court in the present case. In State in Interest of P.R.B., 622 So.2d 716, 719 (La. App. 5th Cir.1993), the court held that once the petitioner has established abandonment and failure to provide care and support, the burden shifts to the parent to establish "just cause" and thereby avoid termination.[4]
In the present case, the court of appeal held that the State, as the petitioning party, had the burden of proving that the parent's failure to provide for the child's care and support was "without just cause." Deeming it significant that the Legislature in adopting the Children's Code did not include the presumption in former La.Rev.Stat. 9:403 under which the parent, upon proof of failure to provide care and support to the child for four months, was presumed to have intended permanently to avoid parental responsibility, the court concluded that Article 1015(9)(b) reflected a change in prior law and accordingly refused to construe the Article as placing the burden of proving just cause on the parent.[5]
Former La.Rev.Stat. 9:403A(1), which was the source of both the desertion and abandonment grounds set forth in La.Child.Code arts. 1015(8) and (9), provided:
A. (1) A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
(a) The child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parent or parents are unknown, the parent or parents have made no provision for the child's care and support and have shown an intention to avoid parental responsibility.
(b) The parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
(2) The introduction of clear and convincing evidence which establishes the facts required by Subparagraphs (1)(a) or (1)(b) of this Subsection shall create a presumption that the parent or parents intended to permanently avoid parental responsibilities. The child shall be declared abandoned unless the parent or parents present evidence that rebuts the presumption. (emphasis added).[6]
Under former La.Rev.Stat. 9:403A(1), once the State proved either (1) desertion for four months without provision for the child's care and support and lack of knowledge of the parent's whereabouts, or (2) failure to provide for the child's care and support for four months, then a presumption arose that the parent intended to avoid parental responsibility permanently. La.Child.Code art. 1015(9), on the other hand, requires proof of abandonment for the requisite period, plus proof of the parent's failure to provide care and support for the child that demonstrates *834 the parent's intention to avoid parental responsibility permanently, unless there was just cause for the failure. However, Article 1015(9)(b) contains virtually the same language as former La.Rev.Stat. 9:403A(1)(b), except that Article 1015(9)(b) contains the phrase "without just cause" while Section 403A(1)(b) was subject to the presumption in Subsection A(2).
We disagree with the court of appeal that Article 1015(9) reflected a substantive change from the prior law that established a presumption upon proof of certain elements. In our view, the Legislature, by not including the presumption language contained in former La.Rev.Stat. 9:403, did not intend to drastically change the legal analysis for determining abandonment. Rather, Article 1015(9) sets forth in the form of an affirmative defense the same principle that former La.Rev.Stat. 9:403 set forth as a rebuttable presumption.[7] Under both statutory provisions, the State has the initial burden of proving certain elements, and the parent can then avoid termination by producing evidence that overcomes the State's initial showing.
Our conclusion that the just cause requirement of Article 1015(9)(b) is an affirmative defense is supported by an analysis of the purpose such a requirement is designed to serve. In In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963), we read a "just cause" exception into former La.Rev.Stat. 9:422.1's provision for dispensing with a parent's consent for step-parent or grandparent adoption when that parent failed to provide court-ordered support for a year or more, reasoning:
The Legislature never intended by this provision to dispense with consent where the legitimate parent shows that his failure to comply with the court order for support was for reasons beyond his control. It intended that consent be dispensed with only where the parent refuses to comply with the order or fails to comply with the order without justification. To say that the consent of a legitimate parent is not required when his failure to comply with an order of support was due to sickness or some other situation beyond his control would be absurd, and the Legislature never intended for the statute to be given such an interpretation.
154 So.2d at 383. In so holding, we placed the burden on the parent to "show that the failure to pay has been with, just cause and therefore excusable." Id. 154 So.2d at 383.
Our holding that just cause is an affirmative defense is further supported by the fact that the "just cause" defense falls squarely within the ambit of so-called "justification" defenses. In State v. Cheatwood, 458 So.2d 907 (La.1984), we stated that "justification" defenses "are not based on the nonexistence of any essential element of the offense, but rather on circumstances which make the accused's conduct excusable on policy grounds [; hence,] such defenses should be treated as affirmative defenses which the accused must establish by a preponderance of the evidence." 458 So.2d at 910. As with other affirmative defenses, the "just cause" defense does not negate any element of the cause of action or of the crime, but merely negates culpability on policy grounds despite the proof of each of the essential elements.
Just cause for abandonment clearly is based on policy grounds that make the accused parent's failure to provide care and support excusable. As one commentator noted, "there may be mitigating, even exculpatory, factors which the court may consider in determining the state of mind of the parent as it pertains to the question of abandonment and subsequent termination of parental rights." Phillip J. Prygoski, When a Hearing is Not a Hearing: Irrebuttable Presumptions and Termination of Parental Rights Based on Status, 44 U.Pitt.L.Rev. 879, 891 (1983). Hence, just cause is a justification defense and thus an affirmative defense, and the State therefore is not required to prove absence of excusable circumstances for the failure to provide care and support.
*835 Finally, we note our agreement with the State's argument that to construe Article 1015(9) as placing upon the petitioner in a termination proceeding the burden of establishing the lack of just cause for failure to provide care and support is to impose an impossible burden of negating all possible or hypothetical just cause defenses as part of the petitioner's case-in-chief.[8]
Accordingly, we conclude that La.Child. Code art. 1015(9) creates an affirmative defense of "just cause" by which the parent can preclude a finding of abandonment upon establishing by a preponderance of the evidence a valid excuse for the failure to provide care and support for the child.

Remand
This Court has now resolved the conflict in the circuits over the burden of proof of just cause by interpreting Article 1015(9) as placing the burden on the parent. This particular case, however, presents special problems. Since the mother did not present any evidence, she obviously did not meet her burden of proof. Nevertheless, we choose to remand to the trial court for a reopened hearing on the newly decided just cause burden.
The attorney appointed by the trial court to represent the mother contacted her about the proceedings. The mother thought that her parental rights as to the daughter already had been terminated by a Pennsylvania court, but she stated she was making improvement in controlling her mental illness, would like to have her children (particularly the son) and believes she will be able to perform her parental duties.
The attorney also spoke to the mental health social worker in Pennsylvania who had been in contact with the Louisiana case worker in the present case. However, the mother's attorney did not introduce any evidence regarding the mother's past or present mental condition as just cause for her behavior, or her prognosis for future parenting ability.
After the trial court's judgment, the appointed attorney withdrew (for unrelated reasons), and another attorney was appointed for purposes of the appeal. However, the new attorney never filed a pleading or made an appearance either in the appellate court or in this court.
We conclude that it is premature to render a judgment terminating the mother's rights at this time.[9] There was evidence of at least two hospitalizations for mental illness and of ongoing treatment, as well as of strange behavior that could possibly be attributable to mental illness. While the mother did not prove mental illness was just cause in this case, there were many obstacles to this proofthe mother and her relatives lived in Pennsylvania at time of trial and the most recent treatment took place there, one child lived in Pennsylvania, and the mental illness itself may have affected her ability to raise the issue or to understand the proceeding. Moreover, since neither the mother nor either of the children live in Louisiana any longer, Louisiana has little interest in terminating parental rights, and it may be more appropriate for the courts in Pennsylvania (or New Jersey) to adjudicate any termination proceedings, where the witnesses would be readily available.[10]
*836 Accordingly, we remand the case to the trial court for a reopened hearing on the issue of just case and for any action deemed appropriate by the juvenile judge.

Decree
The judgments of the lower courts are set aside, and the case is remanded to the juvenile court for further proceedings in accordance with this opinion.
VICTORY, J., not on panel. Rule IV, Part 2, § 3.
NOTES
[*] Judge Yelverton, Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis.
[1] The proceedings in this court involve solely the termination of the mother's parental rights. ML's birth certificate contains no father's name, and the whereabouts of her alleged biological father are unknown. DL's father is unknown. The trial court found that the parental rights of both fathers should be terminated, and that issue is not before us.
[2] At the time of trial, the State was planning to obtain placement of PL with another maternal aunt and uncle in New Jersey. At oral argument, counsel informed the court that the Louisiana court had subsequently granted custody to those maternal relatives.
[3] The records showed that the mother was hospitalized in a mental health facility in Pennsylvania from November 23 to December 3, 1993, and was attending the clinic as an outpatient.
[4] See also State in Interest of Q.P. 94-609, p. 9 (La.App. 3d Cir. 11/2/94), 649 So.2d 512, 519

(noting that "juvenile court considered whether [the parent] presented just cause for his failure to take care of and support QP").
[5] The Third Circuit has also adopted this view. State in Interest of JL, DL, and SL, 93-352 (La. App. 3d Cir. 5/18/94), 636 So.2d 1186, 1193 (holding that "[i]t was the State's burden to prove [the parent] failed to support the child `without just cause'").
[6] The Official Revision Comments to Article 1015(8) state that "[t]he language about the availability of a presumption, contained in R.S. 9:403(A)(2), has been eliminated. Making no mention of proof of the specific intent `to permanently avoid parental responsibilities' adequately reflects the legislative intent that proof of the facts of desertion is proof of such an intent and, therefore, enough to meet the petitioner's burden of proof."

The Official Revision Comments to Article 1015(9) simply state that "[p]aragraph 9 is a revision of R.S. 9:403(A)(1)(b)."
[7] "Despite the differences between affirmative defenses and presumptions as the terms are used by the courts and legal scholars, the impact of these procedural devices on the accused can be identical." 2 McCormick on Evidence § 348 (4th ed. 1992).
[8] Especially apt here is a commentator's statement regarding a hard-to-define category of affirmative defenses in which the "just cause" requirement appears to fall:

[C]reation of the defense with the burden on the defendant can be fairly seen to be a sensible middle position between a much broader statute or a strict-liability-type of statute [i.e., one without a just cause requirement], on the one hand, and, on the other, a statute recognizing the defense and placing an impossible burden on the [State] to establish the existence of facts within the special knowledge of the defendant. Wayne R. Lafave & Austin W. Scott, Jr., Criminal Law § 8 (1982).
[9] If a finding of abandonment is not appropriate because mental illness was just cause for the mother's failure, there may be other grounds for termination. In the meantime, the children are living in the custody of the mother's relatives.
[10] A document in the record indicates that a Pennsylvania judge declined jurisdiction in a termination proceeding in April of 1993 on the basis of lack of personal jurisdiction over the mother, but both the mother and PL were residing in Louisiana at the time. Now that the jurisdictional facts have changed, Pennsylvania clearly has jurisdiction to adjudicate the Pennsylvania mother's parental rights. While Louisiana arguably has continuing jurisdiction to terminate parental rights, Pennsylvania also has jurisdiction, and it may be more appropriate for the Louisiana court to decline to exercise further jurisdiction and dismiss the action here in deference to Pennsylvania as the more appropriate forum to exercise jurisdiction.