| THIBODEAUX, Judge.
Sonja Lambert Zoll, the mother of three minor children, appeals the trial court’s termination of her parental rights regarding these minor children pursuant to La. Ch.Code art. 1015. Finding no error in the trial court’s judgment, we affirm.
*106 I.

ISSUES

Sonja Lambert Zoll presents the following issues for appellate review:
(1) whether La.Ch.Code art, 1015(4)(b) is unconstitutionally vague due to the article’s failure to define the requisite “care and support” parents are legally obligated to provide to their children;
(2) whether the trial court erred in finding that she failed to provide substantial contributions to her children’s care and support sufficient to warrant termination of her parental rights;
(3) whether the trial court erred in determining that her failure to provide substantial contributions to her children’s care and support was not excused for just cause; and
(4) whether the trial court erred in concluding that she did not comply with the case plan and failed to demonstrate reformation sufficient to prevent termination of her parental rights.
II.

FACTS

Sonja Lambert Zoll is the mother of the three minor children who are the subject of this action: M.L., born August 6, 1987, C.L., born December 28, 1992, and D.L., born December 16, 1993. The children first came to the attention of the Department of Social Services (hereinafter “the Department”) when Ms. Zoll sought medical treatment for herself and D.L. Upon investigation, the Department discovered that D.L.’s arm was broken by his biological father, Jessie E. Leone. Further investigation revealed that Mr. Leone physically abused Ms. Zoll and D.L., that Ms. Zoll was aware of the ongoing child abuse, and that the family had a long history of violence, frequently involving law enforcement officials. Ms. Zoll attributed the violence to Mr. Leone’s excessive drinking. The Department removed the children from the parents’ custody. The children were adjudicated children in need of care on July 19, 1994.
The Department attempted to help Ms. Zoll become a better parent, with the intention of reuniting her with her children. Although two case plans were implemented with this objective, Ms. Zoll continued to demonstrate her inability to provide for her children’s education, care and support. Eventually, the Department filed this action to terminate the parental rights of both Ms. Zoll and Mr. Jessie E. Leone. The trial court granted termination and Ms. Zoll brought this appeal.
III.

LAW AND DISCUSSION

Burden of Proof
It is well-established that a parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children. State in the Interest of A.C., 93-1125 (La.1/27/94); 643 So.2d 719. This parental interest includes the “companionship, care, custody, and management of his or her children.” Id. at 726 (quoting Lassiter v. Department of Social Svcs., 452 U.S. 18, 27, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981)). Congruent with the parental interest, the Louisiana Legislature has a legitimate interest in limiting or terminating parental rights under certain conditions. State in the Interest of A.C., 93-1125 (La.10/17/94); 643 So.2d 743, cert. denied, 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995).
Recognizing that the termination of parental rights is a severe and terminal action, the legislature mandated that in order to terminate these rights, the State must satisfy an onerous burden of proof. In the Interest of L. v. A.S., 94-1316 (La.App. 3 Cir. 2/1/95); 649 So.2d 1183. Namely, the State bears the burden of *107 establishing each element of a ground for termination of parental rights by clear and convincing evidence. La.Ch.Code art. 1035(A). Pursuant to this standard, the State must show that the parent’s failure to comply with the enumerated condition is highly probable. State in the Interest of Q.P., 94-609 (La.App. 3 Cir. 11/2/94); 649 So.2d 512. Once a ground for termination has been established, the judge may terminate parental rights if the termination is in the best interest of the child. La. Ch. Code art. 1039.
Standard of Review
Whether the quality of care a parent renders his or her children warrants a termination of parental rights is a question of fact. State in the Interest of K.N.F., 96-390 (La.App. 3 Cir. 7/17/96); 677 So.2d 166. On review, appellate courts will not set aside a trial court’s finding of facts regarding the termination of parental rights absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Parental Obligation of “Care and Support” of Children
Ms. Zoll first argues that La.Ch. Code art. 1015(4)(b) is vague because it fails to define the requisite care and support owed by parents. We interpret this argument as an attack on the constitutionality of the statute. While we find the argument incredible, in an abundance of caution and to preclude any potential future ambiguity, we will consider whether Louisiana law unconstitutionally fails to inform parents of their legal obligations toward their children.
Article I, Section 2 of the Louisiana Constitution of 1974 and the Fourteenth Amendment to the United States Constitution command that statutory language must not be so vague as to leave judges free to determine, without fixed criteria, when an individual must suffer a forfeiture of rights. State in the Interest of Hunter, 387 So.2d 1086 (La.1980). The words and phrases of the statute must adequately describe the parental obligation in such a manner that a person of ordinary reasonable intelligence can be expected to know what care and support is owed to his or her offspring. Cf. State v. Jackson, 404 So.2d 952 (La.1981).
Louisiana Children’s Code Article 1015(4)(b) establishes as a ground for termination of parental rights:
(4) Abandonment of the child by placing him in the physical custody of a non-parent or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
[[Image here]]
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any six consecutive months.
Care. Article 1015(4)(b) is in Title X of the Louisiana Children’s Code. The purpose of that Title is set forth in La.Ch. Code art. 1001 which provides, in part:
The purpose of this Title is to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption.
(Emphasis added). Clearly, the article describes the standard of care expected of parents.
Support. “Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children.” La.Civ. Code art. 227. The obligation to support their offspring is not restricted to married parents; rather, the fact of paternity or maternity, and not the act of marriage, obliges parents to nourish and rear their children, thereby extending the obligation *108 in favor of illegitimate children. Hogan v. Hogan, 549 So.2d 267 (La.1989) (citing 1 M. Planiol, Civil Law Treatise, pt. 2, § 1681).
We have previously held that, “The degree of support is determined by the needs of the child, as well as the circumstances of those who are obligated to pay it.” Durand v. Durand, 460 So.2d 97, 98 (La.App. 3 Cir.1984); St. Romain v. St. Romain, 473 So.2d 390 (La.App. 3 Cir.1985). The State established a case plan in hopes of reuniting Ms. Zoll with her children. That plan took her individual circumstances into consideration in establishing the parameters of her parental role in the children’s lives, including the monetary amount she was to contribute to their support. In light of these facts, we cannot conclude that Ms. Zoll was unconstitutionally devoid of guidance regarding her parental obligation of support.
Judicial interpretation of a statutory provision is a question of law. Daigle v. Daigle, 97-1048 (La.App. 3 Cir. 2/25/98); 710 So.2d 285. We find that Louisiana law provides competent notice to parents of the measure of care and support owed to their children. Therefore, as a matter of law, La.Ch.Code art. 1015 is not unconstitutionally vague and Ms. Zoll’s challenge to its constitutionality must fail.
Failure to Provide Substantial Contributions
M.L., C.L. and D.L. were adjudicated children in need of care on July 19, 1994 and removed from their mother’s custody. The Sabine Parish Office of Community Services developed a case plan to reunite Ms. Zoll with her children. As part of that plan, Ms. Zoll was required to obtain regular and predictable income and provide financial support to the children. Since the children’s care was being provided by a caretaker other than a public agency, the court ordered Ms. Zoll to contribute to the cost of their care and treatment pursuant to La.Ch.Code art. 783. She failed to comply. The record shows that she made only one monthly contribution toward her children’s support, and that payment was made only after her wages were garnished. She quit that job immediately after the garnishment.
When asked what support she had given her children other than when her wages were garnished, Ms. Zoll testified that she was always present at their birthday parties and gave them birthday cakes. When asked whether she had ever given any money to the Department for the care of her children, she responded, “I never gave them no money, no, ma’am.”
The record is replete with evidence that Ms. Zoll did not comply with the court order or the case plan requirement to provide substantial contributions to her children’s support. There is no error in the trial court’s finding that the State proved by clear and convincing evidence that Ms. Zoll did not provide for the care and support of her children for a period of at least six months.
Just Cause
Ms. Zoll contends that her failure to provide substantial contributions to her children’s care and support should be excused for just cause. She presents three 17causes for her failure to contribute substantially to her children’s support: (1) she was critically injured in a car accident and hospitalized for nearly a month; (2) she was terminated from at least one of her jobs; and (3) she applied for but was denied benefits under the Job Training and Partnership Act (“J.T.P.A.”). She cites State in the Interest of M.L., 95-45 (La.9/5/95); 660 So.2d 830 and State v. Cheatwood, 458 So.2d 907 (La.1984) to buttress her right to assert this affirmative defense.
In State in the Interest of M.L., 660 So.2d at 835, the supreme court concluded that “La.Child.Code art. 1015(9) creates an affirmative defense of ‘just cause’ by which the parent can preclude a finding of abandonment upon establishing by a preponderance of the evidence a valid excuse for *109 the failure to provide care and support for the child.” Discussing the defense, the court opined:
Just cause for abandonment clearly is based on policy grounds that make the accused parent’s failure to provide care and support excusable. As one commentator noted, “there may be mitigating, even exculpatory, factors which the court may consider in determining the state of mind of the parent as it pertains to the question of abandonment and subsequent termination of parental rights.” Hence, just cause is a justification defense and thus an affirmative defense, and the State therefore is not required to prove the absence of excusable circumstances for the failure to provide care and support.
Id. at 834 (citation omitted).
Similarly, in State v. Cheatwood, 458 So.2d at 910-911, the supreme court stated, “a parent who knowingly fails to support his children who are in necessitous circumstances may nevertheless escape culpability by establishing (by a preponderance of evidence) that his failure to perform his affirmative duty was caused by ‘physical impossibility’ (such as physical incapacity to work or perhaps lack of opportunity for work without fault on the parent’s part).”
Prior to July 1, 1999, La.Ch.Code art. 1015(9)(b) proscribed the ground for termination of parental rights for a failure to contribute to care and support of children as: The parent has failed to provide for the child’s care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility. (Emphasis added). The “without just cause” language was deleted from the article by Acts 1999, No. 449 § 1, effective July 1, 1999. The new article provides, “As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months,” without recognizing the affirmative defense of just cause. However, the comments to the revised article indicate that a parent may assert an affirmative defense to termination on the ground of abandonment pursuant to La.Ch.Code art. 1035(B). La.Ch .Code art.1015 cmt. d. Since the petition to terminate Ms. Zoll’s parental rights was filed on October 7, 1999, we will evaluate Ms. Zoll’s affirmative defense under Article 1035(B) which provides, “The parent asserting a mental or physical disability as an affirmative defense to abandonment under Article 1015(4) bears the burden of proof by a preponderance of the evidence.”
We now consider each cause of Ms. Zoll’s affirmative defense. She argues that injuries from a car accident rendered her incapable of contributing to her children’s care. The record shows that she was involved in a car accident on June 22, 1996 in which she sustained injuries. Ms. Zoll testified that she received $22,000 in a settlement of her claims arising from the accident. She testified that although she received a portion of that amount after medical and legal expenses, she did not use any of the money to provide financial support for her children as required by the case plan.
The second cause of the affirmative defense is that she was terminated from at least one job. The record reflects that Ms. Zoll was terminated from her employment at Holloway Sports Wear due to excessive absenteeism during the probationary period. They rehired her twice and she quit both times without notice. She also quit her job at Dairy Queen after her wages were garnished in satisfaction of her child support obligation.
A parent alleging lack of employment as just cause for her failure to pay child support must show not only that she was unemployed but that she was unemployable. In re Lambert, 545 So.2d 1122 (La.App. 5 Cir.), writ denied, 548 So.2d 338 (La.1989). The evidence before this Court establishes that Ms. Zoll was employable but chose to be unemployed. Her *110 lackadaisical attitude toward securing steady employment in order to support not only herself but also her children cannot justify her failure to contribute to her children’s support — especially in light of the imminent risk of deprivation of her parental rights.
In the last cause of her affirmative defense, Ms. Zoll notes that she was denied benefits under J.T.P.A. We understand her position to be that she was unable to pay child support because of this denial of benefits.
The record reflects that Ms. Zoll applied for and was denied J.T.P.A. benefits. Her claim was denied because she did not complete the application. It would be absurd to find that Ms. Zoll’s denial of J.T.P.A. benefits excused her failure to support her children when she didn’t complete the application.
An affirmative defense such as just cause “does not negate any element of the cause of action or of the crime, but merely negates culpability on policy grounds despite proof of each of the essential elements.” State in the Interest of M.L., 660 So.2d at 834. Our close scrutiny of the causes raised by Ms. Zoll in her defense falls far short of negating culpability; rather, they augment the State’s case for terminating her parental rights. While the law does not sanction termination of parental rights based solely on a parent’s poverty, State in the Interest of Ardoin, 95-839 (La.App. 3 Cir. 12/20/95); 667 So.2d 1144, writ denied, 96-796 (La.5/17/96); 673 So.2d 609, the law commands the tennination of parental rights of a parent who willfully neglects to provide for the care and support of her children. Surprisingly, all of the causes asserted by Ms. Zoll in her affirmative defense completely repudiate her claim. We are now more fervently convinced that termination was appropriate.
Reformation
Lastly, Ms. Zoll asserts that the trial court erroneously concluded that she had not complied substantially with the case plan and that there was no reasonable expectation of reformation in the near future.
Louisiana Children’s Code Article 1015(5) provides as a ground for the termination of parental rights:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which have been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his needs for a stable and permanent home.
The case plan developed by the Sabine Parish Office of Community Services in 1994 required Ms. Zoll to do the following:
(1) be supportive of the children’s placement and maintain a positive attitude towards the caretakers;
(2) maintain adequate housing with necessary utilities;
(3) visit with the minor children pursuant to the visitation contract;
(4) cooperate with the Department by following her case plan;
(5) submit to a psychological evaluation and follow the recommendation of the evaluator;
(6) complete parenting classes and demonstrate skills learned;
(7) provide appropriate child care and supervision of the children in order to protect them from any type of abuse;
(8) obtain regular and predictable income and provide financial support to the children; and
(9) be honest with the Department about her circumstances and her re *111 lationship -with Jessie E. Leone (added in 1995).
Ms. Zoll complied with some of the requirements of this case plan. She was supportive of her children’s placement; visited them on a regular basis; submitted to a psychological evaluation; and participated in counseling while it was available. However, her therapist reported that she did not appear to benefit from counseling in that she continued to create conflicts in her relationship with the Department and was an unwilling participant in counseling. She failed to attend any parenting classes despite five referrals.
After monitoring Ms. Zoll’s progress in complying with the case plan, the Department attempted a trial placement of one of the children, returning M.L. to her mother’s care. The Department terminated the trial placement after making a surprise visit to Ms. Zoll’s home and finding the child unsupervised for an extensive period of time with Ms. Zoll’s whereabouts unknown.
The Department next established a schedule for the children to make weekend visits with their mother. These visits were terminated after the Department was unable to determine the location and condition of the children during the weekend visits.
Eventually custody was granted to the children’s grandmother, Ms. Zoll’s mother, who subversively transferred physical custody back to Ms. Zoll. The State removed the children from Ms. Zoll’s custody a second time on April 22, 1999 after C.L. was found lying in wet grass near a busy highway in Shreveport, Louisiana during school hours.
A second case plan was formulated in May 1999 with the hopes of eventually reuniting Ms. Zoll with her children. This plan required her to:
(1) maintain adequate housing with necessary utilities;
(2) maintain regular and predictable income;
(3) visit with her children in accordance with the visitation contract;
(4) enroll in and complete anger management;
(5) enroll in and complete a series of parenting classes;
(6) submit to a substance evaluation because of her prior arrest for DWI;
(7) provide financial support to help meet the children’s material needs and be cooperative with support enforcement;
(8) provide appropriate care and supervision for the children in her home;
(9) advise the case worker of any changes in residence, income, household members, and contact phone numbers; and
(10) be honest with the case worker and keep scheduled appointments with the case worker.
Ms. Zoll did not comply with the majority of this ease plan. She was referred to parenting classes six times, finally completing the course after this action was filed. She attended only one of twelve anger management sessions. She was involved in a series of abusive relationships, during which she sought medical treatment for abuse to herself and child, sought a protective order to prevent physical abuse, and summoned the police to quiet domestic violence. Additionally, Ms. Zoll missed appointments with counselors without calling to give an excuse.
It is clear that Ms. Zoll did not comply with her case plan. A mother’s refusal to comply with the prongs of a case plan developed to reunite her with her children indicates that she has not reformed. Cf. State in the Interest of C.L.R. v. Russo, 567 So.2d 703 (La.App. 3 Cir.1990). Further, where the evidence establishes that the mother engaged in violent relationships with a series of men, eschewed steady employment, and refused counseling and parenting classes offered by the State, the court may properly con- *112 elude that parental reformation is unlikely. State in the Interest of J.H. v. R.F.H., 572 So.2d 629 (La.App. 3 Cir.1990), writ denied, 575 So.2d 374 (La.1991).
We find no error in the trial court’s judgment. In fact, we cannot help but agree with the trial judge’s assessment that Ms. Zoll’s diminutive efforts to improve her economic and domestic predicament in order to establish not only her ability but also her sincere desire to provide the most basic essentials of a safe, nurturing home environment for her children fell far short of the de minimus requirements for continued custody. She has demonstrated, after numerous opportunities for improvement, that she is either unable or unwilling to provide adequate care and support for her children. Termination of her parental rights was appropriate under these circumstances as was the finding that her recent choices indicate that any prospect for reformation in the near future is dismal.
IV.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The Appellant, Sonja Lambert Zoll is cast with costs of this appeal.
AFFIRMED.
WOODARD, J., concurs in the result.