hDECUIR, Judge.
B.C.B. and R.L.B. are the parents of C.J.B., a three-year-old girl who has been living in a foster home, and in the custody of the State of Louisiana, for more than two years. In 2002, the State filed a petition to terminate the parental rights of B.C.B. and R.L.B. so the child could be freed for adoption. After a hearing, the trial judge concluded that termination serves the child’s best interest, and the State’s petition was granted. Both parents have appealed; for the following reasons, we affirm.
B.C.B. and R.L.B. are married and have three children: C.J.B., a five-year-old daughter, and B.C.B.’s daughter from a previous relationship. B.C.B. is a drug addict; she has been imprisoned in the past and has enrolled in at least five treatment programs. The record shows that she stayed off drugs for approximately 13 months while C.J.B. was in foster care, and she cooperated with the case plan devised to reunify her family. However, less than two months after C.J.B. was returned to the family home on a trial basis, B.C.B. picked her up from daycare and took her to an undisclosed location where she stayed for three days smoking crack cocaine. B.C.B. did not inform her husband of her whereabouts, and he testified that he drove around looking for her, *1235 to no avail. When B.C.B. did return home, the State took all three children away. After B.C.B. failed a number of drug screens in the months following these events, the State revised its case plan, changing the goal from reunification to termination of parental rights. At the time of the termination hearing, B.C.B. was in a treatment program and was doing quite well.
The record shows that R.L.B. is an active and involved father who takes care of the children during the periods of his wife’s drug-related problems. He has had a steady job for more than twenty years, and he shows genuine love and concern for his wife and children. However, the State presented evidence of R.L.B.’s co-dependency, which leads him to cover for his wife’s transgressions, protect her from lathe consequences of her actions, and leaves him unable to realize what is best for his family. There was evidence that R.L.B. relies on his eight-year-old stepdaughter to help care for the younger girls, and he sometimes leaves her alone at home when she comes in from school. In particular, the child was left alone when R.L.B. drove around the city looking for his wife and younger children. Finally, R.L.B. admitted to testing positive for marijuana on one occasion during the pen-dency of this termination proceeding.
Termination proceedings are governed by Title X of the Louisiana Children’s Code and must always involve an examination of the child’s best interest. The supreme court explained the nature of these proceedings in State in the Interest of GJL and MML, 00-3278, p. 6-7 (La.6/29/01), 791 So.2d 80, 85-86:
This court recently discussed the special concerns involved in cases of involuntary termination of parental rights in State in the Interest of C.J.K and K.K., 00-2375, 00-2504 (La.11/28/00), 774 So.2d 107, and State in the Interest of J.A., 99-2905 (La.1/12/00), 752 So.2d 806, where we also explained that, in termination proceedings, courts must carefully balance the two private interests of the child and the parents. While the parents have a natural, fundamental liberty interest in the continuing companionship, care, custody and management of their children, Lassiter [v. Department of Soc. Servs., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)], supra, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. Lehman v. Lycoming County Children’s Servs. Agency, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. See, e.g., State in the Interest of C.J.K. and K.K., 774 So.2d at 113 (quoting State in the Interest of J.A., 752 So.2d at 811); State in the Interest of S.M., 98 0922, p. 15 (La.10/20/98), 719 So.2d 445, 452. As we stated in State in the Interest of J. A.:
The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve | (¡permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the *1236 child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven.
752 So.2d at 811 (citations omitted).
This court has always recognized, however, that great care and caution must be exercised in these proceedings, because the permanent termination of the legal relationship existing between children and their biological parents is one of the most severe and drastic actions the State can take against its citizens. State in the Interest of J.A., 752 So.2d at 811. Parents have a natural, fundamental liberty interest in the continuing companionship, care, custody and management of their children, which warrants great deference and vigilant protection under the law. Id. Thus, we recognize that the potential loss to parents is grievous, “perhaps more so than the loss of personal freedom caused by incarceration.” Id. Because due process requires that a fundamentally fair procedure be followed when the State seeks to terminate the parent-child legal relationship, actions to terminate must be scrutinized very carefully. Id.
Title X of the Louisiana Children’s Code governs the involuntary termination of parental rights. Article 1015 provides the specific statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. In order to terminate rights, the court must find that the State has established at least one of those statutory grounds by clear and convincing evidence. State in the Interest of J.A., 752 So.2d at 811 (citing La. Child. Code art. 1035(A); Santosky v. Kramer[, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)], supra). Further, even upon finding that the State has met its evi-dentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child’s best interest. La. Child. Code art. 1039; State in the Interest of C.J.K. and K.K., 774 So.2d at 113; State in Interest of ML & PL, 95-0045, p. 4 (La.9/5/95), 660 So.2d 830, 832.
In a termination case, the State has the burden of proving the statutory grounds for termination as fisted in La.Ch.Code art. 1015(5), which provides:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of Lsignificant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
In the instant case, the trial court found that C.J.B. had been in the State’s custody for more than one year and that the parents failed to comply with the State’s plan for reunification. The court determined that B.C.B.’s drug use was continuing, as was R.L.B.’s support of her and his denial of the risks to the child. The court addressed C.J.B.’s foster care placement, noting that she had been in the same home since she was nine months old, and the foster parents wish to adopt her. The court found termination of parental rights is in the child’s best interest and ordered that she be freed for adoption.
The record before us supports the conclusions of the trial court. Both parents candidly admitted their shortcomings as far as drug use, co-dependency, and failing to provide adequate supervision for their *1237 children. Both admitted to failing drug tests during the pendency of the termination proceedings. Dr. John Simoneaux, the psychologist who evaluated the parents in June of 2002, testified that B.C.B.’s drug use was “going to continue to plague this family,” even though she was doing well when he last saw her. He considered B.C.B.’s prognosis to be poor, given her long history of abuse, and he did not believe that R.L.B. realized the seriousness of their problems or the actions necessary to provide a stable home for the children. He concluded that termination would be in the best interest of C.J.B.
Our review of the record reveals a very difficult and unfortunate dilemma. While these parents undoubtedly have great love for C.J.B., they have not acted with her best interests in mind. R.L.B., while well-intentioned and conscientious, does not seem to understand what is best for his family. The trial court’s decision to terminate their parental rights means that C.J.B. will not be exposed to her mother’s potential Rdrug use nor will she be at risk from inadequate supervision. C.J.B., just three years old, has not lived with her parents since infancy; other than the familiarity she has gained from visits with R.L.B. and B.C.B., she does not know them as parents. The State contends that the foster parents wish to adopt her and have already been certified for adoption. In fact, the record indicates that the foster parents have delayed a move overseas to work as missionaries in order to see a conclusion to these legal proceedings. Accordingly, we conclude the trial court did not err in its decision to terminate the parental rights of R.L.B. and B.C.B.
We find no merit to the argument that R.L.B. has, in effect, been given the choice of leaving his wife or losing his children. To the contrary, R.L.B. was given the opportunity to show that he could protect his children from his wife’s addiction. By allowing B.C.B. to pick up the children from daycare and be solely responsible for them during that time, a situation that B.C.B. indicated was routine, R.L.B. failed to protect his children and failed to comply with the requirements devised by the State for return of the children to his custody.
Finally, in rendering this decision, we do not intend to imply that termination may be the appropriate outcome for R.L.B. and B.C.B. as far as their other two children are concerned. The older daughters presumably have stronger bonds with their parents than C.J.B., and the record indicates that one has Down’s Syndrome. If termination proceedings are pursued, the special needs of each child must be considered individually. Our decision in this case rests on the unique circumstances presented herein, including both the age of C.J.B. and the length of time she has been with the same foster parents who intend and hope to adopt her.
LFor the foregoing reasons, the judgment of the trial court is affirmed. Costs of the appeal are assessed to R.L.B. and B.C.B.
AFFIRMED.