912 So.2d 88 (2005)
STATE of Louisiana, In the Interest of M.H., R.H., Jr. and K.H., Plaintiffs-Appellees
v.
K.W.H. and R.H., Sr., Defendants-Appellants.
No. 40,332-JAC.
Court of Appeal of Louisiana, Second Circuit.
September 23, 2005.
*90 Stephen T. Collins, Shreveport, for Appellant, K.W.H.
Williams A. Haynes, for Appellant, R.H., Sr.
Kinberly Smith, State of Louisiana, Dept. of Social Services, for Appellees, M.H., R.H., J.R. and K.H.
W. Eugene Golden, Shreveport, for Appellee, M.H., R.H., Jr. and K.H.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, Judge.
The parents, K.W.H. and R.H., appeal a judgment terminating their parental rights to their minor children. For the following reasons, we affirm.

FACTS
In December 2003, the minor children, M.H., K.H. and R.H., Jr., were taken into care by the Louisiana Department of Social Services ("DSS") pursuant to an instanter order issued by the Caddo Parish Juvenile Court. In February 2004, the children were adjudicated in need of care. At the March 2004 disposition hearing the court approved the case plan with a goal of reunification. The case plan for the mother, K.W.H., involved the following goals: enter substance abuse treatment, complete parenting and anger management classes, demonstrate the learned skills, attend court hearings, regularly visit her children and provide them with financial support. During the pendency of this case, the minor children have resided together with foster care parents.
Initially, K.W.H. was cooperative with the case plan. From December 2003 to June 2004, she completed parenting and anger management classes, attended the psychological evaluations ordered by the court and entered into substance abuse treatment. During this time period, her drug screens were negative. However, in June 2004, K.W.H. relapsed and returned to using cocaine. She discontinued her visits with the children, quit her job and stopped attending counseling and drug treatment.
The case plan for R.H. required that he submit to a substance abuse assessment and random drug screens, attend drug treatment, complete parenting and anger *91 management classes, visit the children and provide them with financial support, demonstrate appropriate parenting skills and maintain a positive relationship with DSS, the court and the foster parents. From December 2003 to May 2004, R.H. visited the children at five of the 16 scheduled visits and did not provide them with financial support. He failed to attend parenting classes, substance abuse treatment or the psychological evaluation. In May 2004, R.H. was incarcerated and is currently in prison.
In January 2005, DSS filed a petition to terminate the parental rights of K.W.H. and R.H. to the minor children. After a trial, the juvenile court issued oral reasons for judgment finding that the mother failed to provide significant contributions to the children's support and did not visit or communicate with the children for a period of six consecutive months, that there was no substantial compliance with the case plan and no reasonable expectation of significant improvement in the parent's condition or conduct in the near future.
The court also found that the father failed to provide any significant contribution to the children's support for six consecutive months, that there was no substantial compliance with the case plan and no reasonable expectation of significant improvement in the parent's condition or conduct in the near future. The court rendered judgment terminating the parental rights of K.W.H. and R.H., finding that the ruling was in the best interest of the children. Both parents appeal the judgment.

DISCUSSION
The parents contend the trial court erred in terminating their parental rights. K.W.H. argues that the court was clearly wrong in finding that she abandoned her children because the evidence of her dependent personality and untreated anxiety established a mental disability which prevented her from performing her support and visitation responsibilities.
LSA-Ch.C. art. 1015 provides the statutory grounds by which a court may terminate parental rights. The state must prove the grounds for termination by clear and convincing evidence. LSA-Ch.C. art. 1035(A). To meet this burden, the state must establish only one statutory ground for termination, but the court must also find that termination is in the best interest of the children. LSA-Ch.C. art. 1037(B). An appellate court will not set aside a juvenile court's findings of fact in the absence of manifest error. State in Interest of S.S.S., J.J.S. and K.K.S., 39,047 (La.App. 2d Cir.8/18/04), 880 So.2d 153.
In the present case, K.W.H. testified that in June 2004, she relapsed and used cocaine shortly before the children were to begin overnight visits in her home. K.W.H. acknowledged that she did not visit the children after June 2004 and did not telephone them after July 2004. She admitted that since June 2004, she had not provided any support for her children by sending clothing or gifts or by making payments to the foster parents. K.W.H.'s testimony demonstrated that when the petition to terminate was filed in January 2005, she had failed to provide significant contributions to the children's care and support and had failed to maintain significant contact with the children for a period of six consecutive months.
In her appellate brief, K.W.H. asserts that her failure to support or visit the children should be excused because she has a mental disability. The parent asserting a mental or physical disability as an affirmative defense to abandonment under Article 1015(4) bears the burden of *92 proof by a preponderance of the evidence. LSA-Ch.C. art. 1035(B).
Here, K.W.H. submitted to several psychological evaluations. In February 2004, Daniel Lonowski, Ph.D., reported that the results of psychological testing showed that K.W.H. has anti-social personality traits that harm her social decision-making ability and behavior.
In April 2004, the court appointed David Atkins, Ph.D., a clinical psychologist, to evaluate K.W.H. Based on the test results and his clinical impressions, Dr. Atkins agreed with Dr. Lonowski that K.W.H. exhibited characteristics of anti-social personality disorder, indicating a tendency to act impulsively, engage in risky behavior and disregard the needs of others. Dr. Atkins opined that K.W.H.'s drug abuse amplified her anti-social traits, but that in the absence of drugs, such personality traits alone would not diminish her functioning. Dr. Atkins also opined that K.W.H. has a "dependent personality," which tended to involve her in unhealthy relationships. He recommended that K.W.H.'s drug dependence needed to be addressed as a first step.
In August 2004, Dr. Suzanne Woodard, a psychiatrist, evaluated K.W.H. and reported that her main complaint involved episodes of intense anxiety. Dr. Woodard diagnosed K.W.H. with substance dependence and anxiety disorder, noting that her most important need was sobriety maintenance treatment. Dr. Woodard opined that K.W.H. might benefit from anti-depressant medication.
Although the psychological evaluations indicated that K.W.H. has anti-social and dependent personality traits, the reports did not conclude that K.W.H. was mentally disabled. Drs. Atkins and Woodard opined that her drug abuse was the most important problem to address. Dr. Atkins found that without drugs, K.W.H.'s personality traits would not significantly impair her ability to function. Thus, K.W.H. failed to establish a mental disability by a preponderance of evidence. Based on this record, we cannot say the trial court erred in finding clear and convincing evidence that K.W.H. abandoned her minor children by failing to significantly contribute to the children's support and failing to visit or communicate with her children.
R.H. argues that DSS failed to prove that he demonstrated an intent to permanently avoid all parental responsibilities because DSS was required to show that he did not provide support for his children without just cause. Contrary to R.H.'s argument, "just cause" is an affirmative defense which allows a parent, after the state has proved abandonment for failure to provide for the children's care and support, to prevent termination by proving that the failure was with just cause and excusable. State in Interest of M.L., 95-0045 (La.9/5/95), 660 So.2d 830.
Here, the testimony showed that other than providing gifts during one visit, R.H. did not provide any financial support for his children prior to his incarceration and did not provide financial support while in jail. Thus, the state presented sufficient evidence that R.H. has failed to significantly contribute to his children's care and support under Article 1015(4). The only justification asserted by R.H. is his incarceration. However, incarceration is not a just cause defense to failure to support children or maintain contact with them in a termination of parental rights case if the parent is incarcerated as a result of his own actions. State in Interest of J.T.C., 04-1096 (La.App. 5th Cir.2/15/05), 895 So.2d 607. Consequently, R.H.'s argument lacks merit.

*93 Compliance with Case Plan

K.W.H. and R.H. contend the court erred in finding that the state showed there has been no substantial compliance with the case plan and that there is no reasonable expectation of significant improvement in their condition or conduct in the near future. Termination of parental rights is warranted when at least one year has elapsed since a child was removed from the parent's custody, there has been no substantial parental compliance with a case plan which has been previously filed by the state and approved by the court, and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future. LSA-Ch.C. art. 1015(5).
Lack of parental compliance with a case plan may be demonstrated by the parent's failure to attend scheduled visitations with the child, failure to communicate with the child, failure to keep the department apprised of the parent's whereabouts, the repeated failure to comply with the required program of treatment and the persistence of conditions that led to removal or similar harmful conditions. LSA-Ch.C. art. 1036. Lack of reasonable expectation of significant improvement in the parent's conduct in the near future may be proved by: any physical or mental illness, substance abuse or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm; or any other conduct that reasonably indicates that the parent is unwilling or unable to provide an adequate permanent home for the child. LSA-Ch.C. art. 1036(D).
In the present case, Jennifer Pennington, a DSS child welfare specialist, developed the case plan for the parents and monitored their performance. Pennington testified that K.W.H. was compliant until June 2004, when she relapsed and her drug screen was positive. Pennington stated that K.W.H. returned for substance abuse assessments in September 2004 and March 2005, but she did not comply with the plan requirements to attend drug treatment meetings, to visit her children and to remain drug and alcohol free. Pennington testified that K.W.H. had not complied with the plan requirement to maintain a stable residence, since she moved frequently and lived with several different men from June 2004 to the date of trial.
Pennington stated that in January 2004 she discussed the case plan with R.H. and gave him notice of scheduled appointments for a psychological evaluation and a substance abuse assessment, but he did not appear at any of those appointments. She testified that R.H. did not attend any counseling or group meetings prior to his incarceration.
K.W.H. did not dispute Pennington's testimony and did not offer any explanation for her behavior. In her brief, she contends that her two attempts to resume her treatment show continued efforts to comply with her case plan. R.H. acknowledged that he "never worked" any of his case plan prior to his incarceration. R.H. testified that he was participating in the Alcohol Chemical Treatment Series ("ACTS") and Alcoholics Anonymous programs in prison. R.H. stated that he will have a job with a previous employer after his release from jail and that he wanted more time to complete his case plan.
Allen Mott, an administrative assistant at a local casino, testified that he was the teacher of the ACTS classes at prison. Mott confirmed that R.H. was a regular participant in ACTS, which started on March 1, 2005. Mott explained that the goal of ACTS was to educate students about the nature of addiction and suggest *94 ways to maintain a drug-free lifestyle with an emphasis on religious faith. Mott stated that he was not a certified counselor in drug abuse treatment or a minister.
A lack of parental compliance may be shown with proof of either failure to visit the child, to communicate with the child, failure to contribute to the cost of the child's foster care or failure to comply with the required treatment and rehabilitative services. The record shows that K.W.H. did not complete drug treatment or stay sober. After her relapse, she stopped all contact with and support for her children. Her failed attempts to resume rehabilitation, without any other action, are not enough to demonstrate substantial compliance. In March 2005, K.W.H. stopped attending counseling after two sessions, even though she faced termination of her parental rights.
Prior to his incarceration in May 2004, R.H. admittedly did not attend parenting class, attend drug treatment meetings or go to the psychological evaluation. He continued using drugs and alcohol, did not support his children and visited them only 5 times from December 2003 to May 2004. He has not complied with the plan requirement for drug treatment. Although R.H. enrolled in ACTS while in prison, the testimony showed that the program does not have staff trained in drug treatment counseling. The record demonstrates that R.H. has made only minimal efforts to comply with the case plan.
Based on the evidence presented, we cannot say the trial court erred in finding that both K.W.H. and R.H. failed to substantially comply with the case plan. Their arguments lack merit.
Article 1036(D) provides that the lack of any reasonable expectation of improvement in a parent's condition is shown when substance abuse renders a parent unable to exercise parental responsibility without exposing the child to a serious risk of harm. K.W.H. is 28 years old with a history of drug abuse since age 17. K.W.H.'s continuing inability to care for her children due to her drug abuse and her unwillingness to place the children's needs above her own, or even to communicate with them, supports a finding of no reasonable expectation that she will improve in the near future.
R.H., who is 34 years old, admitted to drug abuse since the age of 17 and to inflicting violence upon his wife. The testimony showed that the pattern of his life has been characterized by substance abuse and criminal behavior. At trial, R.H. stated that he has been sober while in jail and that he wanted another chance to show he can be a better father. However, the testimony demonstrated that R.H. has been given numerous chances to visit with his children and provide for their needs, but failed to do so. Based upon this record, we cannot say the trial court was clearly wrong in finding that there is no reasonable expectation of significant improvement in R.H.'s conduct in the near future.

Best Interest of the Children
K.W.H. and R.H. contend the termination of their parental rights is not in the best interest of the children. In termination proceedings, courts must carefully balance the interests of the child and parents. While the parents have an interest in the continuing companionship, care and custody of their children, the children have a profound interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable and continuous relationships found in a home with proper parental care. State in Interest of J.M., J.P.M. and M.M., 02-2089 (La.1/28/03), 837 So.2d 1247. In balancing these interests, the courts have consistently *95 stated that the interests of the children are paramount. State in Interest of J.M., J.P.M. and M.M., supra.
The minor child, M.H., testified that in foster care the children are fed and are not left alone at night. M.H. stated that she wants to stay in the home of the foster parents and that she understood that if adopted by the foster parents, K.W.H. and R.H. would not be her parents anymore.
Dr. Susan Vigen, a licensed psychologist, provided a family assessment of the children's situation in the foster home. Dr. Vigen opined that they were a bonded and close family group. Dr. Vigen testified that the foster parents wanted to adopt the children and opined that adoption would be in the best interest of the children.
We recognize that a bond exists between the children and K.W.H. and R.H. and that the parents expressed a desire for a continued relationship with their children. However, we cannot ignore the ample evidence that K.W.H. and R.H. have failed to provide stability and care for these children. The interest of the children to live in a safe and secure environment is paramount to the interest of the parents.
After carefully reviewing the entire record, we conclude the trial court correctly found that the best interests of the children required the termination of the parental rights of K.W.H. and R.H., thereby freeing the children for adoption. The assignments of error lack merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellants, K.W.H. and R.H.
AFFIRMED.