NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-390

STATE OF LOUISIANA IN THE INTEREST OF

J.T., A.T., C.F., A.B., AND L.D.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. J-7876
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PHYLLIS M. KEATY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and
Candyce G. Perret, Judges.

AFFIRMED.

**Trent Brignac**
**District Attorney**
**Julhelene E. Jackson**
**Assistant District Attorney**
**Post Office Drawer 780**
**Ville Platte, Louisiana  70586**
**(337) 363-3438**
**Counsel for Other Appellee:**
**State of Louisiana**

**Chantel Conrad**
**Attorney at Law**
**825 Kaliste Saloom Road**
**Brandywine III, Suite 150**
**Lafayette, Louisiana  70508**
**(337) 262-2250**
**Counsel for Other Appellee:**
**Department of Children and Family Services**

**Jessica Cantave**
**Acadiana Legal Services**
**1020 Surrey Street**
**Lafayette, Louisiana  70501**
**(337) 237-4320**
**Counsel for Other Appellees:**
**A.T. (child)**
**C.F. (child**
**A.B. (child)**
**L.D. (child)**

**Christian E. P. Fontenot**
**In Proper Person**
**c/o Dixon Correctional Institute**
**Post Office Box 788/ U-3-D-9**
**Jackson, Louisiana  70748-0788**
**Appellant**

**KEATY, Judge.**

This is an involuntary termination of parental rights case. Appellant/C.E.P.F.,[1] who has been incarcerated throughout the entirety of these proceedings and who is scheduled to remain incarcerated until July 2024, appeals a November 28, 2016 judgment[2] permanently terminating his parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

R.F. is the mother of all the children involved in this matter. Appellant is the biological father of C.F., a male born in 2006, and he considers himself the father of A.T., a female born in 2003, because she was three years old when he married R.F. and he helped to raise her. In addition, Appellant is the presumed father of A.B., a female born in 2012, and L.D., a male born in 2014, because he was married to R.F. at the time of their births. This matter has been pending since May 19, 2015, when C.F, A.B., L.D., and A.T., along with their older half-brother, J.T., were removed from R.F.'s custody and placed into the custody of the State of Louisiana, Department of Children and Family Services pursuant to an Oral Instanter Order. The allegations which led to the children's removal were that C.F. and A.B. had been sexually abused by J.T., that R.F. had knowledge of the abuse yet failed to protect them from further abuse, that R.F. otherwise failed to adequately supervise them, and that they were living in a one-room trailer without electricity or running water. Two days after their removal, the trial court found

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties will be used to protect and maintain the privacy of the minor children involved in this proceeding.

[2] The judgment also terminated the parental rights of two of the other fathers but neither of them appealed the judgment. The third father had previously consented to the termination of his parental rights.

cause to continue the custody of the children with the State. Because Appellant was incarcerated at the time, the trial court appointed counsel to represent his interests. Thereafter, the trial court signed numerous orders for Appellant to be transported from whichever correctional facility he was housed to the many hearings held in this matter.

The children were adjudicated in need of care in June 2015. At a dispositional hearing held a few weeks later, Appellant was ordered to comply with a case plan requiring that he acquire and maintain safe and adequate housing for six consecutive months, submit to random urine screens, complete anger management and parenting classes, and make parental contributions of $25 per month. The State agreed to transport C.F. once a month to visit with Appellant at the correctional facility where he was housed. The goal of the case plan at that time was reunification with a concurrent goal of adoption, which goal remained in place at review hearings held in December 2015 and February 2016.

In advance of an August 24, 2016 review hearing, Appellant filed a Motion in Limine, on the basis of La.Code Evid. art. 609(B),[3] seeking an order prohibiting the State from questioning him about any of his prior convictions.[4] The trial court denied the motion by order dated August 8, 2016. Following the review hearing, the goal of the case plan was changed to adoption, and on September 6, 2016, the State filed a Petition for Termination of Parental Rights and Certification for Adoption in which it sought to terminate the parental rights of the mother and the

---

[3] Louisiana Code of Evidence Article 609, titled "Attacking credibility by evidence of conviction of crime in civil cases," provides, in pertinent part, as follows: "**B. Time limit.** Evidence of a conviction under this Article is not admissible if a period of more than ten years has elapsed since the date of the conviction."

[4] Appellant did not specifically list any of his prior convictions in his Motion in Limine.

four fathers of C.F, A.B., L.D., and A.T.[5]  With regard to Appellant, the Petition alleged that it would be in the best interest of his minor children to terminate his parental rights because of the grounds listed in La.Ch.Code art. 1015(5)(b), 1015(6), and 1015(7).[6]

The termination hearing took place on November 18, 2016.  At the conclusion of the presentation of evidence, the trial court found that the State proved that Appellant's parental rights should be terminated and that such termination was in the best interests of his children.  It issued an oral ruling stating that because Appellant was not scheduled to be released from his current incarceration until 2024, which was "some eight years from now," Appellant was "obviously . . . not in a position to provide care and[/]or emotional or physical support" for his children.  The trial court further noted that Appellant's incarceration made him unable to financially contribute to the care of his children.  A written judgment terminating Appellant's parental rights was signed on November 28, 2016.[7]

Appellant, in proper person, appealed the judgment, and the trial court later signed an order allowing him to proceed in forma pauperis.  Appellant has filed a pro se brief in this court asserting that the trial court erred:  1) in allowing his trial counsel to withdraw from the record without filing a notice of appeal and by not appointing counsel to represent him on appeal, 2) in denying his Motion in Limine,

---

[5] The termination petition did not involve J.T. as he was in the custody of the Office of Juvenile Justice serving a two-year sentence.

[6] At the time the termination petition was filed, the aforementioned grounds were numbered La.Ch.Code art. 1015(4), 1015(5), and 1015(6) respectively; however, Article 1015 was amended before the termination hearing took place. *See* 2016 La. Acts No. 608, § 1.

[7] The judgment continued the matter with regard to the mother and ordered that the children remain in the State's custody for another six months.

3) in solely relying on his incarceration in support of its decision to terminate his parental rights, and 4) in determining that termination of his parental rights was in C.F.'s best interest.

## LAW AND DISCUSSION

> Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights. Although the State need only establish one ground for termination, the trial court must also find that the termination is in the best interest of the child in order to meet the statutory requirement of La.Ch.Code art. 1035(A), which requires that grounds for termination be proven by clear and convincing evidence.

*State in Interest of J.K.G.*, 11-908, pp. 5-6 (La.App. 3 Cir. 1/11/12), 118 So.3d 10, 14-15. "A trial court's findings on whether or not parental rights should be terminated are subject to the manifest error standard of review." *Id.* at 14.

"Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." Uniform Rules—Courts of Appeal, Rule 1–3. In addition, courts of appeal have "no jurisdiction to receive new evidence." *Bullock v. Commercial Union Ins. Co.*, 397 So.2d 13, 15 (La.App. 3 Cir. 1981).

### *Withdrawal of Appellant's Trial Counsel*

While he admits that he was represented by counsel throughout the trial court proceedings in this matter, Appellant maintains that the trial court erred in allowing his trial counsel to withdraw before lodging an appeal on his behalf and by failing to appoint appellate counsel to represent him. His arguments are based on the equal protection and due process protections guaranteed by the Fourteenth Amendment of the United States Constitution.

4

Although Appellant refers to a motion to withdraw filed by his court-appointed trial counsel, our review of the trial court record lodged in this court does not contain any such motion. Likewise, the record provides no indication that Appellant challenged any such withdrawal of representation by his trial counsel or that Appellant requested that the trial court appoint counsel to represent him on appeal. The record does show, however, that Appellant had notice of and was represented by counsel throughout the trial court proceedings in this matter. In addition, Appellant timely sought an appeal from the termination judgment, and his appellate brief was timely filed in this court.

Louisiana law provides that both parents and children "have the right to be represented by separate counsel in a **termination proceeding**." La.Ch.Code art. 1016 (emphasis added). Appellant has failed to cite any binding Louisiana jurisprudence mandating that counsel be afforded to a parent **appealing** a judgment terminating his or her parental rights, particularly when that parent has not requested that such counsel be appointed to represent him. In the instant matter, Appellant was represented by counsel throughout the termination proceeding. Moreover, as we will later discuss, the record contains overwhelming support for the trial court's conclusion that the State proved several grounds for which Appellant's parental rights should be terminated and that such termination was in his children's best interests. As a result, we conclude that the interest of justice does not require this court to review the issues presented in Appellant's first assigned error which he failed to challenge at the trial court level. *See* Uniform Rules—Courts of Appeal, Rule 1–3.

5

### Denial of Appellant's Motion in Limine

In his second assigned error, Appellant argues that the trial court abused its discretion in denying his motion to exclude the State from attacking his credibility by referencing his 1987 conviction for simple rape, his 1990 conviction for theft, and his 1998 conviction for possession of cocaine because those convictions occurred fourteen years before "he was arrested for his current charge in 2012 in which he pled guilty to a fifteen (15) year sentence."

The record reveals that the trial court denied Appellant's Motion in Limine before the termination petition was filed and that Appellant never re-urged the motion. In addition, despite the denial of Appellant's motion, the State did not cross-examine Appellant at the termination hearing regarding the aforementioned convictions. Finally, Appellant did not challenge the denial of his Motion in Limine at the trial court level.

The judgment being appealed is the November 28, 2016 termination judgment. Because there is no reference at the termination hearing to any of Appellant's convictions other than those for which he is currently incarcerated, Appellant suffered no injustice regardless of whether or not the trial court erred in denying his Motion in Limine. Thus, this court will not review the merits of Appellant's second assigned error. *See* Uniform Rules—Courts of Appeal, Rule 1–3.

### Did the State Prove That Appellant's Parental Rights Should be Terminated?

In the instant matter, the trial court determined that the State proved that Appellant's parental rights should be terminated for the grounds listed in La.Ch.Code art. 1015(5), 1015(6), and 1015(7), which provide, in pertinent part:

(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

. . . .

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

. . . .

(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

(7) The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.

Failure to comply with a case plan can be evidenced by a parent's failure to make court-ordered parental contributions to the costs of the child's care and/or a parent's "lack of substantial improvement in redressing the problems preventing reunification." La.Ch.Code art. 1036(C)(6). A "lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by . . . [a] pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time." La.Ch.Code art. 1036(D)(2). Finally, "a sentence of at least five years of imprisonment raises a

presumption of the parent's inability to care for the child for an extended period of time, although the incarceration of a parent shall not in and of itself be sufficient to deprive a parent of his parental rights." La.Ch.Code art. 1036(E).

In *State ex rel. J.T.C.*, 04-1096, pp. 2-3 (La.App. 5 Cir. 2/15/05), 895 So.2d 607, 616 (on rehearing), *writ denied*, 05-466 (La. 4/8/05), 899 So.2d 11, *cert. denied*, 546 U.S. 890, 126 S.Ct. 187 (2005), the fifth circuit noted:

> Once the State has established abandonment and failure to provide care and support, the burden shifts to the parent to establish "just cause" and thereby avoid termination. *State ex rel. T.M.H.*, 99-433 at 6, 748 So.2d at 1219; *State in Interest of M.L.*, 95-45, p. 9 (La.9/5/95), 660 So.2d 830, 833.
>
> Incarceration is not a "just cause" defense to failure to support the children or to maintain contact with them in a termination of parental rights case, if the incarceration is shown to be a result of his actions. *In the Interest of H.A.N.*, 528 So.2d 1079, 1080 (La.App. 5th Cir.1988); *In re Fleming*, 01-1405, p. 7 (La.App. 5th Cir.4/30/02), 817 So.2d 371, 376. In *H.A.N.*, we stated that "There is no set rule resolving the question of whether incarceration is justification for non-support. Facts and circumstances vary. Each case is decided upon its particular merits." 528 So.2d at 1079-80, (citations omitted).

Appellant contends that the trial court erred in "relying solely" on his incarceration as a basis for terminating his parental rights. Appellant is mistaken. The fact of Appellant's incarceration was obviously factored into the trial court's decision to sever his parental rights. In our view, however, it was the reality of how his incarceration affected Appellant's ability, or more accurately his inability, to care for his children that formed the bulk of the State's proof that Appellant's parental rights should be terminated.

Lashonna Strauss, the caseworker assigned to this matter, testified at the termination hearing that Appellant was incarcerated when his children were removed from their mother's home and that he did not make a single parental contribution during the eighteen months that his children had been in the State's

8

custody. Appellant did not challenge the fact that he had not made any parental contributions, nor did he offer any justification for his failure to do so. Accordingly, we conclude that the State proved that Appellant was in violation of La.Ch.Code art. 1015(5)(b).

Ms. Strauss also stated that Appellant failed to meet the components of his case plan requiring that he maintain safe and adequate housing, that he address his substance abuse issues, and that he attend parenting classes. On the other hand, Ms. Strauss confirmed that Appellant had sent messages to her and to his aunt to be given to C.F. and that the State had transported C.F. to prison for visits with Appellant. She further acknowledged that Appellant had completed a class in prison that satisfied the anger management component of his case plan. Ms. Strauss testified that Appellant was currently incarcerated on charges of aggravated second degree battery and simple kidnapping, with an anticipated release date of July 2024, which date Appellant confirmed in his testimony at the hearing. While Appellant claims in his brief to this court that his release date is subject to change, we note that the Appellant offered no evidence at the hearing that his incarceration would end earlier than expected. Finally, Ms. Strauss expressed her opinion that Appellant had not substantially complied with his case plan and that the length of his future incarceration left her with no expectation that he would be able do so in the near future.

Appellant claims that Ms. Strauss misled the trial court when she testified that he did not address his substance abuse issues. First, he points out that his case plan requires him "to submit to random drug screens" and argues in his brief that as a prison trustee he is subject to regular drug screens, none of which he has ever failed. He also maintains in his brief that the Dixon Correctional Institute where he

9

is housed has excellent substance abuse classes and that he is on the waiting list to attend those classes. While Appellant is correct that his case plan called for random drug screens rather than attendance at substance abuse classes, we are prohibited from considering evidence not presented at the hearing. Appellant was present at the hearing and represented by counsel and could have offered testimony and/or evidence in support of his argument that he was in compliance with the substance abuse element of his case plan.

Appellant also argues that Ms. Strauss incorrectly stated that he failed to attend the parenting class required by his case plan, and he attaches to his brief a certificate showing that he completed a nurturing and parenting class while in prison. While we cannot accept evidence that was not submitted to the trial court, our review of the record reveals that Ms. Strauss acknowledged at the August 24, 2016 review hearing that, while in prison, Appellant completed a parenting program which was in compliance with his plan. Accordingly, we find merit to Appellant's argument that he satisfied the parenting requirement set forth in his case plan.

Appellant further contends that as an incarcerated father, he made substantial efforts, through cards, letters, and visits, to keep in contact with C.F. and to maintain their father/son bond. We note, however, that Appellant admits that "the only evidence that there is any sort of bond between [him] and his son is his own testimony." Again, Appellant had the opportunity to offer evidence at the termination hearing to show the extent of the contact maintained between him and C.F. during the time this matter has been pending. Moreover, our reading of the transcript of the hearing shows that Ms. Strauss provided more details about the

communications and visits between Appellant and C.F. than testified to by Appellant.

Appellant also insists that the termination petition brought against him was caused by the abuse and neglect that his children suffered at the hands of their mother rather than by his own actions. We find this argument to be speculative at best. While Appellant is correct about the circumstances under which his children came into the State's custody, the fact remains that Appellant was incarcerated at the time of the children's removal from their mother's home, and it would be improper to assume that the abuse and neglect would have not occurred had Appellant not been incarcerated at that time. Finally, Appellant puts much emphasis on the fact that Ms. Strauss testified that he did the best he could to work his case plan in light of his incarceration. While Ms. Strauss did make the foregoing statement, she clearly expressed her ultimate opinion that Appellant had not substantially complied with his case plan.

After considering the entirety of the foregoing testimony, we conclude that the State met its burden of proving that Appellant had not substantially complied with his case plan and that there was no basis to reasonably expect any improvement in the Appellant's conduct in the near future considering the length of time that he is scheduled to remain incarcerated. Thus, the State proved that Appellant was in violation of La.Ch.Code art. 1015(6).

At the hearing, Ms. Strauss testified that the four children had been together in an adoptive placement home until the last month when the State removed them from that home after learning that the foster parents had inadequately supervised their own biological child. Since that time, C.F. and A.T. had been staying with Appellant's aunt and uncle who were interested in adopting them and were in the

11

process of being certified as an adoptive placement. According to Ms. Strauss, there had been contact between C.F. and his aunt and uncle before he was placed in their home. Appellant testified that his relatives had brought C.F. to visit him in prison and that they had allowed him to talk to C.F. by telephone. Appellant stated that he did not object to his aunt and uncle adopting C.F. and A.T. if doing so would be in their best interests. Appellant argues in brief that because C.F. is being cared for by his relatives, he should be credited with providing a reasonable plan for his child other than foster care. We disagree, as any adoption of C.F. and A.T. would necessarily be through the foster care system.

C.F. entered the State's custody as the result of a court order. As mentioned previously, Appellant is expected to remain incarcerated until the summer of 2024, thereby preventing him from being able to provide care for C.F. for a substantial period of time. C.F. was eight years old when he entered the State's custody. If Appellant is released on schedule, C.F. will be over seventeen years old and will have been in State's custody approximately nine years should this court not affirm the judgment terminating his parental rights. In light of the forgoing evidence, we are convinced that the State proved that Appellant was in violation of La.Ch.Code art. 1015(7).

In conclusion, we find that given the totality of the evidence, the trial court did not manifestly err in terminating Appellant's parental rights. Appellant's third assigned error lacks merit.

***Was Termination of Appellant's Parental Rights in the Best Interest of C.F.?***

> In a case involving the involuntary termination of parental rights, there are two separate private interests involved: those of the parents and those of the child. *See State ex rel D.L.R.,* 08-1541 (La. 12/12/08), 998 So.2d 681. A parent has a natural and fundamental liberty interest in the continuing companionship, care, custody, and

management of their children's lives which warrants great deference. *See Id.* In opposition to the parent's interest is the child's interest "in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care." *State ex rel. J.M.,* 02-2089, p. 8 (La.1/28/03), 837 So.2d 1247, 1252. In termination proceedings, the interest of the parent must be balanced with the interest of the child, and "courts of this state have consistently found the interest of the child to be paramount over that of the parent." *Id.*

*State in Interest of M.C.*, 16-69, pp. 7-8 (La.App. 3 Cir. 6/1/16), 194 So.3d 1235, 1240-41, *writ denied*, 16-1273 (La. 9/6/16), 205 So.3d 918. "[T]he permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration." *State ex rel. J.A.*, 99-2905, p. 9 (La. 1/12/00), 752 So.2d 806, 811.

In his final assignment of error, Appellant asserts that the trial court erred in finding that termination of his parental rights was in C.F.'s best interest. More specifically, he contends that the trial court failed to consider the bond between him and his son and that it failed to consider C.F.'s attachment to his current caretaker.

Ms. Strauss testified that A.B. and L.D. were placed in a certified adoptive home on the same date that C.F. and A.T. were placed with Appellant's relatives. She stated that both foster families wished to adopt the children living with them and that they are committed to ensuring that the four children remain in contact with each other should the adoptions occur. In fact, Ms. Strauss commented that the children had already spent several weekends together during the month of their current placement. Ms. Strauss also testified that C.F. knows that Appellant is his father, that he and his father share parts of their names, and that C.F. would like to

13

remain in contact with Appellant. Similarly, Appellant testified that he would like to maintain as much of a relationship as possible with C.F. and the other children.

While Appellant's wish to maintain parental rights is admirable, C.F. and his siblings were removed from their mother's home because they were not being properly cared for and their fathers, including Appellant, were not around to take care of them. Until one month prior to the hearing, the children were together in a foster home, but placement proved to be unsuitable. From that time, however, the children have been living with two foster families who want to adopt them and who are in favor of providing the children opportunities to spend time with each other.

After balancing Appellant's interests against his children's interests in living with families that will provide them with care and relationships that they need to thrive, we are convinced that their best interests will be served by terminating Appellant's parental rights. Accordingly, we find no manifest error in the trial court's determination that termination of Appellant's parental rights was in the best interests of his children.

## DECREE

For the foregoing reasons, the judgment of the trial court terminating C.E.P.F.'s parental rights is affirmed. All costs of this appeal are assessed against C.E.P.F.

**AFFIRMED**.

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.