IN RE: RICHARD TODD BUTTONE AND
WIFE TONYA LYNN BUTTONE APPLYING
FOR THE INTRAFAMILY ADOPTION OF J. B.
G.

NO. 19-CA-317

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE JEFFERSON PARISH JUVENILE COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 2018-AD-47, DIVISION "A"
HONORABLE ANN MURRY KELLER, JUDGE PRESIDING

December 18, 2019

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Robert A. Chaisson

<u>**AFFIRMED**</u>
 **FHW**
 **MEJ**
 **RAC**

COUNSEL FOR DEFENDANT/APPELLANT,
JOSHUA J. GILL
        Stephen T. Hoover

**WICKER, J.**

Joshua Gill, the biological father of J.B.G., appeals the trial court's judgment terminating his parental rights and granting the child's stepfather, Richard Buttone's petition for intrafamily adoption. We affirm the judgment granting the adoption.

**Factual Background**

J.B.G.[1] was born on January 24, 2008, to Tonya Buttone (then Tonya Snyder Gill) and Joshua Gill, appellant. On July 29, 2010, Mrs. Buttone divorced Mr. Gill. Mrs. Buttone and J.B.G. moved to the residence of Mr. Buttone, whom Mrs. Buttone was dating, in April of 2011. In January of 2012, a court in St. Bernard Parish gave sole custody of J.B.G. to Mrs. Buttone and ordered Mr. Gill to pay $150 in monthly child support. At some point, this amount was lowered to $75 per month.

According to Mr. Gill, the last time he saw J.B.G. was October 28, 2012. Thereafter, sometime in 2013, Mr. Gill was arrested and convicted for "indecent behavior with a juvenile." Because of inconsistencies in Mr. Gill's testimony, and because no documentary evidence was introduced to establish his dates of incarcerations, it is not clear from the record the exact dates of Mr. Gill's incarceration. However, in August of 2014, while he was out of prison, Mr. Gill attempted to visit J.B.G. at Mrs. Buttone's residence on Kent Avenue. Mrs. Buttone answered the door holding her and Mr. Buttone's newborn son. Mr. Gill claims that Mrs. Buttone told him to leave and that he would "never see" J.B.G. again. After Mr. Gill left, Mrs. Buttone filed a police report regarding his visit. Shortly after that visit, Mrs. Buttone and J.B.G. moved to a new house and Mr. Gill was re-incarcerated.[2]

---

[1] Pursuant to Uniform Rules- Courts of Appeal Rule 5-2, we will use the initials to protect the identity of the minor child.
[2] The incarceration was unrelated to Mr. Gill's visit to the Kent Street house.

On November 16, 2016, Tonya and Richard Buttone were married. In October of 2017, Mr. Gill placed $1500 on deposit with the Clerk of Court for St. Bernard Parish for child support payments. The Buttones were unaware of this payment until they hired an attorney to begin adoption proceedings. On April 26, 2018, Tonya Buttone signed an authentic act consenting to the adoption of J.B.G. by Mr. Buttone.

**Procedural History**

On July 24, 2018, Mr. Buttone filed a petition for intrafamily adoption of his minor stepdaughter, J.B.G., pursuant to the provisions of La. Ch. C. arts. 1243, *et seq*. Mr. Buttone's petition alleged that the child's biological father was incarcerated at that time and had not had significant visitation and/or contact with his child in over six months, thereby obviating his consent to the adoption under La. Ch. C. art. 1245(C). On December 20, 2018, the Louisiana Department of Children and Family Services transmitted a confidential report to the court finding that J.B.G. "has not established a relationship or bond with her biological father. . .[and that] she loves her step-father and she would love to carry his last name."[3]

The Notice of Filing of the petition was served on Mr. Gill in prison on January 15, 2019.[4] On January 28, 2019 Mr. Gill filed a written answer opposing the adoption. He filed a motion to continue the March 11, 2019 hearing until after his parole hearing on May 17, 2019.[5] A contested hearing was held on March 25, 2019, in which Mr. Gill, Mrs. Buttone, and Mr. Buttone all testified. The district court judge terminated Mr. Gill's parental rights and granted Mr. Buttone's petition

---

[3] The trial court appointed independent counsel for J.B.G. on February 13, 2019.

[4] La. Ch. C. art. 1247 provides that if the alleged father's parental rights have not been terminated, he shall be served with notice of the filing of the petition and his rights shall be determined in accordance with the provisions of Articles 1137-1143 (under Title XI. Chapter 10 Surrender of Parental Rights Procedure).

[5] La. Ch. C. art. 1253 states that the court should hear the petition within 90 days if there is opposition, although the court may extend this time for up to sixty days for good cause.

19-CA-317                                    2

for adoption with no written reasons for judgment. Mr. Gill filed a timely appeal of the trial court's judgment.

## Analysis

Intrafamily adoptions, the adoption of a child by a stepparent or certain other relatives, are authorized by the Louisiana Children's Code. La. Ch. C. arts. 1170, 1243. Under La. Ch. C. art. 1245(C), the consent of a biological parent is not required for adoption by a stepparent petitioner married to the parent with lawful custody when either (1) the other parent has refused or failed to comply with a court order of support, without just cause, for a period of at least six months, or (2) the other parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of at least six months.

The party petitioning for adoption has the initial burden of proving that a biological parent's consent is not required due to the parent's nonsupport of or lack of communication with the child. *In re Orgeron*, 94-458 (La. App. 5 Cir. 11/16/94), 646 So.2d 1137. Once a prima facie case is proven, the opposing parent then has the burden of proving that his failure to provide support or communicate with his child was with "just cause," or due to factors beyond his control. *In re C.B.*, 94-0755 (La. 10/17/94), 643 So. 2d 1251, 1253; *In re D.D.D.*, 06-2274 (La. App. 1st Cir. 5/4/07), 961 So.2d 1216, *rehearing denied, writ denied*, 07-1669 (La. 8/31/07), 962 So.2d 436, *certiorari denied* 128 S.Ct. 1243, 552 U.S. 1195, 170 L.Ed.2d 85. The trial court must thereafter consider whether the adoption is in the best interest of the child. *In re Orgeron, supra.* There is a rebuttable presumption that adoption is in the best interest of the child when the petitioner is the stepparent married to the child's custodial parent. La. Ch. C. art. 1255(C); *In re T.A.S.* 04-1612 (La. App. 1st Cir. 10/29/04), 897 So.2d 136, 140.

Upon review of a decision regarding intra-family adoption, a reviewing court should affirm the trial court where the judgment is not clearly wrong or

manifestly erroneous because the determination of whether adoption is in the best interest of the child must be decided on the facts of each case. *In re B.V.G.*, 04-969 (La. App. 5 Cir. 12/14/04), 893 So.2d 106, 108, *writ denied,* 05-0109 (La. 1/26/05), 893 So.2d 56.

On appeal, Mr. Gill argues his non-support and visitation were prevented by factors beyond his control: his incarceration and acts of Mrs. Buttone. He states that the trial court erred in ruling without evidence of his incarceration and terminating his parental rights without clear and convincing evidence. After careful review of the record in this case, we find the trial court's findings are not clearly erroneous.

*1. Failure to Comply with Child Support Order*

The burden lay initially with the Buttones to establish that Mr. Gill had, for a period of at least six months, failed to comply with a court order of support. Mrs. Buttone testified that Mr. Gill had paid his monthly child support five times in 2012 and then stopped.[6] According to Mrs. Buttone, at the time of the hearing, Mr. Gill owed approximately $14,000 in arrearages and had made no payments in the previous nineteen months.

Mr. Gill testified that he had made prior payments to Mrs. Buttone between June and October of 2012.[7] Mr. Gill also testified that he deposited $1500 with the St. Bernard Parish Clerk of Court but failed to explain why no deposits were made before that date. His testimony was inconsistent as to why he had not made payments in the six months prior to the hearing. When asked why he didn't continue to deposit payments with the St. Bernard Parish Clerk of Court, he stated "I could have, but I wanted to send it to her. I didn't want it stockpiling up in

---

[6] Mrs. Buttone agreed when her attorney asked her if Mr. Gill did not pay "for a total of almost eight years" between 2012 and the deposit with the court system. A more accurate description of the situation is that no payment was made for four to five years until a deposit with the court in 2017, with no further payments at the time of the hearing in 2018.
[7] Mr. Gill also claimed that Mrs. Buttone "extracted $3,000 to $6,000" from his bank account while he was incarcerated.

there." He testified that he could make support payments "no problem," but later testified that he did not have the funds to pay child support.

This Court has previously held that the question of whether incarceration is justification for non-support is to be decided on a case by case basis due to varying facts and circumstances. *In Interest of H.A.N.*, 528 So.2d 1079, 1080 (La. App. 5 Cir. 6/29/88).[8] The Third Circuit found it was incumbent upon the biological parent to prove the date of his incarceration to meet his burden and declined to reach the issue of whether failure to pay child support is beyond a parent's control when he was in prison for the willful and voluntary commission of a crime. *Berry v. Berryhill*, 330 So.2d 405 (La. App. 3rd Cir. 1976).

Despite Mr. Gill not introducing documentary evidence to establish the dates of his incarceration, the reason for his incarceration, or the "fault for his incarceration," Mr. Gill appears to fault the trial court for not having those documents. However, even though Mr. Gill's testimony was inconsistent regarding the exact dates of his incarceration, he acknowledged that he was incarcerated for extended periods of time.[9] Mr. Gill further admitted that when he was released for a few months in 2014, he made no payments.

Mr. Gill's varied testimony regarding his financial ability and the dates of his incarceration failed to prove his "just cause" for his failure to pay his child support obligations. Despite his contention that incarceration prevented him from making payments, he was able to make a substantial payment in 2017 while presumably incarcerated. Therefore, we conclude that the trial court was not manifestly erroneous to find that Mr. Gill failed to support his child for a period of at least six months.

---

[8] While recent legislation suspends child support obligations of parents without the means to pay due to incarceration for one hundred eighty consecutive days or more during the term of their imprisonment, this legislation does not become effective until August 1, 2020. *See* La. R.S. 9:311.1.

[9] Mr. Gill testified that he was "incarcerated October of 2012 to February 2013." At other times Mr. Gill stated that he was incarcerated "since 2013" or "soon after seeing his child in October of 2012."

*2. Failure to Visit or Contact*

The Buttones had the burden of proving that Mr. Gill failed to visit, communicate, or attempt to communicate with the child for six months. Mrs. Buttone testified that Mr. Gill failed to appear for a court-ordered visit in June of 2012, and that thereafter his visitation was suspended for failure to provide drug test results and to pay child support. She testified that he has not seen, written, or sent gifts to J.B.G. since June of 2012.

Mr. Gill argues that his efforts to maintain communication with J.B.G. were beyond his control due to his incarceration and actions taken by Mrs. Buttone. Mr. Gill admitted that the last time he saw his child was October 28, 2012, because he was incarcerated shortly afterwards. He testified that he attempted to visit her in August of 2014 to "see what was going on with my daughter and with my belongings that she took from the house" upon his "release" but Mrs. Buttone told him to leave and that he would "never see" J.B.G again. While he did not believe that a restraining order was issued, Mr. Gill was aware that a police report was filed and he claims that the police advised him not to contact Mrs. Buttone or his child.[10] Mr. Gill also claimed to have been incarcerated two months after his attempted visit. He testified to unsuccessful efforts to have his family contact Mrs. Buttone's family via social media to track her down and to not having computer access in prison to look for her.[11] Mr. Gill hoped that when Mrs. Buttone collected the money he deposited with the clerk of court he would get a contact number for her. He testified that he did not attempt to contact J.B.G. and Mrs. Buttone further

---

[10] Mrs. Buttone testified that Mr. Gill "showed up on [her] doorstep" four years prior to the hearing which resulted in a police report.

[11] Although Mrs. Button testified that her family did move, she testified that her mail was forwarded. She acknowledged that she did not give a forwarding address to the court or child support system because her custody case was "all over." Mrs. Buttone advised the trial judge that she's on "multimedia" and Mr. Gill could have contacted her relatives who live in the same small town in Michigan as Mr. Gill's relatives. She was unaware of Mr. Gill's mother reaching out to her mother and brother.

because he did not want to be "harassing people." Mr. Gill felt that his efforts to reach out to J.B.G. were thwarted.

As discussed in the previous section, Mr. Gill's testimony regarding his incarceration dates was inconsistent. Although he also testified that he was released on bond at one point and was on probation for a period of time, he failed to provide the court with those dates. He failed to show that he attempted to visit his child while he was released or attempted to communicate with her while he was incarcerated. While Mrs. Buttone calling the police when Mr. Gill attempted to visit could be seen as her placing barriers upon his unscheduled visitation with his child, Mr. Gill admitted to not making efforts at other types of communication despite knowing her address at one point.

This Court has held incarceration is not just cause for failure to communicate. *In re B.E.S.*, 08-777 (La. App. 5 Cir. 5/6/09), 15 So.3d 133. An incarcerated parent can make telephone calls or mail letters. Mr. Gill failed to meet his burden of proving his incarceration provided "just cause" through his unconvincing testimony. While he testified about not having an up-to-date address, Mr. Gill's testimony showed that he did not attempt to correspond by mail.

The testimony regarding family court "suspending" Mr. Gill's visits and Mrs. Buttone calling the police during an attempted visit raise an issue of whether the lack of contact was due to interference of the other parent. While it is easy to reject Mr. Gill's failing to make more efforts at contact to avoid "harassing" Mrs. Buttone, when considered in the context of his criminal status and being on pretrial release or probation, he would understandably want to avoid the risk of law enforcement involvement. Louisiana courts have found that when a stepparent and custodial parent hinder the attempts of the natural parent from visiting or communicating with their child, the natural parent may be excused from their

failure. *In re C.L.A.C.*, 17-1703, (La. App. 1st Cir. 10/24/18), 266 So.3d 302, 308. Non-communication cannot be found when visitation is made difficult due to the other parent's refusal to give the parent a physical address or thwarting attempts to speak to the children on the phone. *Id. See also Chastain v. Timmons* (La. App. 3rd Cir. 3/14/90), 558 So.2d 344, 347.

However, we conclude that the trial court was not clearly erroneous in finding that Mr. Gill did not attempt to communicate with his child for at least six months. This Court has previously held that fear that the other parent would call the police is not just cause for failure to communicate. *In re B.E.S.*, 08-777 (La. App. 5 Cir. 5/6/09) 15 So.3d 133, 137. While more inquiry by the trial court into the police intervention in Mr. Gill's 2014 visit would have been helpful, it cannot be said that the trial court was clearly erroneous after evaluating the credibility of the witnesses. Courts may deny adoption in some cases where a parent has failed to support a child if the parent continued to maintain contact or have a positive, ongoing relationship with the child. *In re Lambert*, 545 So.2d 1122 (La. App. 5 Cir. 6/7/89). As the failure to pay child support was clearly established, the court's additional finding of Mr. Gill's lack of communication with his child further supports the trial court's decision to grant the intrafamily adoption of J.B.G.

*Best Interest of the Child*

Even where the other parent's consent is obviated by failure to visit or communicate with his child, the court must still consider whether the adoption is in the best interest of the child. *In re D.D.D.*, 961 So.2d at 1222. Courts must make this determination by examining the child's relationship with the stepparent and the noncustodial natural parent. *Id.* Important factors include the depth and closeness of the child's ties with the noncustodial natural parent, the effect which the loss of this relationship would have on the child, the seriousness and finality of severing the relationship between the parent and child, and the importance and benefit to the

child of a continued relationship with the parent. *In re C.E.F.*, 07-0992 (La. App. 1st Cir. 9/14/07), 977 So.2d 1, 5-6.

Louisiana Department of Children and Family Services found that J.B.G. "has not established a relationship or bond with her biological father." At the hearing, J.B.G.'s counsel affirmed J.B.G.'s desire to be adopted by Mr. Buttone. Mrs. Buttone testified that J.B.G. requested the adoption because she wanted the same last name as the rest of her family, including her three siblings, and had even started writing "Buttone" at school a few years prior.

Mr. Gill failed to introduce evidence of a relationship with his child to rebut the presumption that the adoption by her stepfather would be in her best interest. Although Mr. Gill testified that there may be medical and educational benefits available to J.B.G. due to his disabled veteran status, there was no evidence presented regarding his status or eligibility for benefits for his dependents. Furthermore, Mr. Gill testified as to his substance abuse issues, as well as post-traumatic stress disorder (PTSD) and depression for which he planned to seek treatment. This Court has previously considered the significant disruption to children while parents are "getting themselves together" to improve their level of functioning. *State in Interest of M.P.*, 538 So.2d 1112, 1116 (La. App. 5 Cir. 1989). Therefore, we find no manifest error in the decision of the trial court that adoption by her stepfather is in J.B.G's best interest.

CONCLUSION

The evidence before the trial court revealed that since October of 2012, Mr. Gill made only one child support payment in 2017 and one attempted visit in 2014. While Mr. Gill claims his incarceration for most of the last seven years provides "just cause" for his failures, he provided no evidence as to the actual dates of his imprisonment or how it prevented him from providing support or communicating with his child. Mr. Gill also failed to prove a relationship with his child or how a

continued relationship with him would be in her best interest.  Accordingly, we affirm the decision of the trial court granting Mr. Buttone's intrafamily adoption without Mr. Gill's consent and terminating Mr. Gill's parental rights.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 18, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**19-CA-317**

**E-NOTIFIED**
JUVENILE COURT (CLERK)
HONORABLE ANN MURRY KELLER (DISTRICT JUDGE)
STEPHEN T. HOOVER (APPELLANT)          COURTNEY L. SCHROEDER (APPELLEE)

**MAILED**
AMY C. KERN (APPELLEE)
ATTORNEY AT LAW
POST OFFICE BOX 24037
NEW ORLEANS, LA 70184